**Kim J. TANNER, Plaintiff and Appellant,**

v.

**The PHOENIX INSURANCE COMPA-NY, Defendant and Appellee.**

No. 890521–CA.

Court of Appeals of Utah.

Oct. 5, 1990.

Earl D. Tanner, Jr. (argued) Tanner, Bowen & Tanner, Salt Lake City, for plaintiff and appellant.

Paul S. Felt and Steven J. Aeschbacher (argued), Ray, Quinney & Nebeker, Salt Lake City, for defendant and appellee.

Before BILLINGS and JACKSON, JJ., and ROBERT L. NEWEY, Senior Juvenile Court Judge.[1]

JACKSON, Judge:

This declaratory judgment action involves a claim for minimum personal injury protection benefits mandated by Utah Code Ann. § 31A–22–307 (Supp.1990), a part of Utah's no-fault automobile insurance statute.[2] The trial court granted "summary judgment" to The Phoenix Insurance Company (Phoenix), without explanation, and ordered the dismissal of Tanner's complaint, based on its view of the meaning of the household services benefit provision in section 31A–22–307(1)(b)(ii). Under this section, personal injury protection benefits must include

a special damage allowance not exceeding $20 per day for a maximum of 365 days, for services actually rendered or expenses reasonably incurred for services that, but for the injury, the injured

---

1. Robert L. Newey, Senior Juvenile Court Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(10) (Supp.1990).

2. Utah Code Ann. § 31A–2–307 (Supp.1990) permits the filing of a declaratory action in Third Judicial District Court to obtain a judicial declaration of the meaning of any provision of the insurance code as applied to stipulated facts.

person would have performed for his household....

Because we conclude that the trial court erroneously interpreted the statute, we vacate the order entered below and remand.

The parties presented the following undisputed facts to the trial court. After Tanner was injured in an automobile accident on June 16, 1988, she filed claims with Phoenix for household services benefits. In determining Tanner's benefits, Phoenix used a "Household Services Worksheet" that shows forty-five dates from June 17 through August 8 on which services had been rendered to Tanner's household that, but for her injury, she would have rendered to the household herself. For each date services were actually rendered, the type of service (housework, meal preparation, yard work, child tending, or cleaning and laundry), the name of the service provider, the hours spent, and the hourly rate for the services are shown. The cost of each particular service (hours × hourly rate) is also listed, as is the daily total cost of all services rendered on each specified date. On some listed days, enough hours of services were provided to Tanner's household to result in a daily total cost of more than $20. For some dates, the cost of all services rendered was less than $20. No substitute services were rendered on five days in July and on three days in August before August 8, the last date on which the worksheet indicates any substitute services were rendered to the Tanner household.

Phoenix processed Tanner's claim by using the total cost of all services rendered on each day any service was rendered. If the total cost on a day was less than $20,

Phoenix used this lesser amount as the allowance payable to Tanner for that day. Phoenix did not carry over the unused portion of a day's $20 allowance and apply it to the cost of services rendered on another day that exceeded $20. Likewise, if the cost of all services rendered on one day was more than $20, only $20 was calculated as the amount payable. The excess was not carried over to another day of disability when no substitute services, or less than $20 worth of substitute services, were actually provided to Tanner's household.

For example, no substitute services were provided the Tanner household on July 30, but on July 31 the total cost of services rendered was $30. For these two days, Phoenix calculated the benefit payable as $20—nothing for July 30 and the daily cap of $20 for July 31—because it interpreted section 31A–22–307(1)(b)(ii) as setting a benefit limit of $20 per day only for each day any substitute services were actually rendered to an injured insured's household, even though Tanner was presumably just as unable to perform any household services on July 30 as she was on July 31.

Tanner filed this declaratory judgment action to challenge Phoenix's interpretation of the household benefits provision as imposing a limit of $20 for each day services are actually rendered.[3] Instead, she contended, the statute limits the household services benefit to an aggregate maximum of $20 for each day the injured insured is disabled, i.e., unable to perform services for the household, up to 365 days. The trial court accepted Phoenix's construction of section 31A–22–307(1)(b)(ii),[4] and Tanner

---

**3.** Tanner also sought a declaration that, under section 31A–22–307(1)(b)(ii), the insurer must pay the household services benefit for services rendered by an insured's family member and for the labor portion of restaurant meals. In light of Tanner's admission that Phoenix had allowed her claims for such services, the trial court did not rule on the question. At oral argument before this court, Phoenix's counsel conceded that the insurer considers services performed by a family member and the labor portion of restaurant meals as reimbursable under section 31A–22–307(1)(b)(ii), and we agree.

**4.** The cursory order appealed from does not contain the trial court's declaration of the mean-

ing of section 31A–22–307(1)(b)(ii), the only relief requested by Tanner. *See* Utah Code Ann. § 31A–2–307 (Supp.1990); Utah Code Ann. § 78–33–1 (1987). Absent some basis for denying declaratory relief altogether, *e.g.,* Utah Code Ann. § 78–33–6 (1987), the trial court should have entered a judgment declaring the meaning of the statutory provision at issue. Because it is clear that the order of dismissal in this case was grounded on the trial court's adoption of Phoenix's interpretation of the provision instead of Tanner's, we treat the court's order as a declaration that section 31A–22–307(1)(b)(ii) mandates benefits of $20 for each day services are actually rendered to the insured.

appealed. Because the trial court's ruling on the meaning of the statute presents a question of law, we review it for correctness, giving no deference to the trial court's conclusion. *State of Utah v. Rio Vista Oil, Ltd.*, 786 P.2d 1343, 1347 (Utah 1990).

■■ A statute is ambiguous if it can be understood by reasonably well-informed persons to have different meanings. *Kimberly–Clark Corp. v. Public Servs. Comm'n*, 107 Wis.2d 177, 320 N.W.2d 5 (Ct.App.1982), *aff'd*, 110 Wis.2d 455, 329 N.W.2d 143 (1983). In such a circumstance, the role of a court is to determine the legislature's intent in light of the entire statute's purpose. *P.I.E. Employees Fed. Credit Union v. Bass*, 759 P.2d 1144, 1151 (Utah 1988). Because an ambiguous statute should be interpreted in a reasonable manner, *Roberts v. Clark County Fire Protection Dist. No. 4*, 44 Wash.App. 744, 723 P.2d 488, 490 (1986), it is also appropriate to look to the effect each plausible meaning of statutory language will have in practical application. *See Stanton Transp. Co. v. Davis*, 9 Utah 2d 184, 341 P.2d 207, 209 (1959).

■■ We hold that section 31A–22–307(1)(b)(ii) is ambiguous because it is reasonably susceptible to the two conflicting meanings attributed to it by Tanner and Phoenix. The references in that provision to "services actually rendered or expenses reasonably incurred" as well as to an insured's "inability to perform [household] services" makes it uncertain whether the "$20 per day" benefit limitation means "$20 per day services are rendered" or "$20 per day of disability."

Other parts of the no-fault statute give no guidance about how to resolve this ambiguity. However, one express purpose of the insurance code is to ensure that claimants are treated fairly and equitably. Utah Code Ann. § 31A–1–102(2) (1986).[5] With this in mind, we conclude that the legislature intended to establish the minimum household services benefit as $20 per day of disability, up to a maximum of 365 days of disability.

The reasonableness of our interpretation is apparent when the two plausible meanings are applied to the following example of two claimants who are unable to perform household services on two consecutive days because of their automobile accident injuries. Claimant A reasonably obtains $40 worth of substitute services on Monday (four hours of cleaning and laundry, two hours of child care, and two hours of meal preparation at a rate of $5 per hour). Claimant B also obtains $40 worth of the same type of services, at the same rate, but the provider performs the four hours of cleaning and laundry on Monday and the other four hours of services on Tuesday.

Under our interpretation of section 31A–22–307(1)(b)(ii), these claimants would be equally compensated for their losses. Both would be paid $40 in household services benefits because the two days of disability provided them each with a maximum benefit of $40. Under the interpretation argued for by Phoenix and accepted by the trial court, Claimant A would recover only $20 in benefits solely because the service provider did not (or would not or could not) spread the one day's work over two days. We do not believe the legislature intended unfairly disparate treatment of two similarly situated claimants based only on such a fortuity.[6]

Furthermore, it is reasonable to assume, absent any indication in the statute to the

5. *See also* Utah Code Ann. § 68–3–2 (1990) (statutes are to be liberally construed with a view to "effect the objects of the statutes and to promote justice").

6. Phoenix argues that a "$20 per day of disability" interpretation of the statute will create a cumbersome administrative burden because an insurer—required by section 31A–22–309 to pay household services benefits on a monthly basis—will have no way to predict how long into the future an insured's disability will last. However, it would seem to be a fairly simple matter for the insurer to pay benefits for reasonably incurred services in an amount up to $20 multiplied by the number of days of disability that have theretofore accrued, and then carry over to the next month a credit of (1) any excess cost of services reasonably incurred in the prior month or (2) any unused portion of the $20 per-day-of-disability allowance from the prior month.

contrary, that the legislature intended to make consistent use of the meaning of "days" in section 31A–22–307(1)(b)(ii). The statute mandates a minimum household services benefit not exceeding "$20 per day for a maximum of 365 days." *Id.* Phoenix would have us interpret this provision as imposing a cap of $20 per day for the cost of services reasonably incurred *that day,* although it is apparent that the 365 day maximum refers to 365 days of disability, not 365 potentially discontiguous days on which services were actually rendered. If the legislature intended to employ the two different senses of "days" within section 31A–22–307(1)(b)(ii), it could simply have provided for a household services benefit "not exceeding $20 per day of services for a maximum of 365 days."

Because the trial court's order dismissing Tanner's complaint was based on its erroneous interpretation of section 31A–22–307(1)(b)(ii), see note 4 *supra,* we vacate the court's order and remand for entry of a declaratory judgment consistent with this opinion.

BILLINGS, J., and ROBERT L. NEWEY, Senior Juvenile Court Judge, concur.