C. Stan DERBIDGE, personal representative of the Estate of Esma S. Seymour, Plaintiff and Appellant,

v.

MUTUAL PROTECTIVE INSURANCE COMPANY, Defendant and Appellee.

No. 971338–CA.

Court of Appeals of Utah.

July 30, 1998.

Christian S. Fonnesbeck and Thomas R. King, Salt Lake City, for Appellant.

David B. Watkiss, Carolyn Cox, and Brett J. Delporto, Salt Lake City, for Appellee.

Before BENCH, GREENWOOD and ORME, JJ.

## OPINION

ORME, Judge:

Plaintiff C. Stan Derbidge appeals the trial court's dismissal, on summary judgment, of his complaint for breach of contract filed against Mutual Protective Insurance Company (MPIC). We reverse and remand, concluding MPIC has not shown that, as a matter of law, the insured's misstatement qualified as a "misrepresentation" under Utah Code Ann. § 31A–21–105(2) (1994).

## FACTS

In June 1989, Esma S. Seymour met with an MPIC representative to apply for long-term care insurance. In its application form, MPIC inquired about Ms. Seymour's medical history. Specifically, MPIC asked whether Ms. Seymour had received "medical advice or treatment, taken any medications, been confined to any hospital and/or nursing facility or consulted with a physician" for several specified conditions during the prior five years. These conditions included "high blood pressure" and "[o]rganic mental disease or disorder (such as Alzheimer's disease)." Ms. Seymour answered "yes" to the high blood pressure question and "no" to the organic-mental-disease-or-disorder question. MPIC also asked whether Ms. Seymour had been "confined to any hospital" within the prior five years for any condition not specifically mentioned in the application. To this question, Ms. Seymour answered "no." MPIC then inquired more specifically regarding any conditions about which Ms. Seymour had answered affirmatively. In response, Ms. Seymour disclosed that her high blood pressure was being treated through controlled medication, that her condition was under control and being treated "quarterly," and that her doctor was Warren Hughes. Ms. Seymour and the MPIC representative then signed the application and Ms. Seymour paid a first premium of $910.80.

MPIC issued a long-term care policy to Ms. Seymour, effective July 16, 1989. Approximately six months later, Ms. Seymour submitted a proof of loss, claiming that, due to Alzheimer's disease, she required semi-skilled care in a nursing facility. In investigating Ms. Seymour's claim, MPIC obtained her medical records, which revealed that, beginning in November of 1985, Dr. Hughes had diagnosed Ms. Seymour as suffering from memory impairment. Ms. Seymour was hospitalized in late November 1985 for memory problems associated with taking high blood pressure medication, and Dr. Hughes had written that Ms. Seymour "exhibit[ed] considerable obtundation of memory." Ms. Seymour's medical records further revealed that in 1985, and also in 1986, Dr. Hughes again noted Ms. Seymour's memory impairment. Finally, her records revealed that in January 1988 she was hospitalized for chest pain. Upon Ms. Seymour's discharge from the hospital, Dr. Hughes concluded, according to her records, that "[o]rganic brain syndrome [was] probable."

Based upon these discoveries, MPIC rescinded the long-term care policy issued to Ms. Seymour. In a letter dated February 28, 1990, MPIC informed Ms. Seymour that it issued the insurance policy in reliance on her representations in the application, that the medical history relating to her memory problems was material, that MPIC would not have issued the policy had it known of this medical history, and that MPIC was therefore voiding the long-term care policy and refunding the $910.80 premium previously paid.

In early 1993, Ms. Seymour commenced this suit for breach of contract. She alleged that she had no knowledge of Dr. Hughes's diagnosis of or any treatment for an organic brain condition. Consequently, Ms. Seymour contended, any misstatements in the application regarding her mental condition were

innocent and unknowing and therefore not grounds for rescission of the policy. In support of this position, plaintiff submitted the affidavit of Dr. Hughes, who stated that until Ms. Seymour's December 1989 hospitalization, which was after she applied to MPIC, he did not treat her for chronic brain syndrome or Alzheimer's disease, and that he did not discuss Alzheimer's disease with her. Dr. Hughes further stated that to his knowledge, in June 1989, which was the month Ms. Seymour applied to MPIC for insurance, she was not aware of the possibility that she might have such a condition. MPIC responded that, under Utah Code Ann. § 31A–21–105 (1995), any misstatement in an application for insurance—even an innocent one—constitutes "misrepresentation" and therefore justifies rescission of an insurance policy if the misstatement is material and relied upon by the insurer.

MPIC moved for summary judgment, and the trial court granted it, holding that

> Esma Seymour's answers in her application for the long-term care insurance policy indicating that she had not received medical advice or consulted with a physician for "Organic mental disease or disorder (Alzheimer's disease)" and that she had not been hospitalized during the last five years were shown by her medical records to be untrue and were misrepresentations even though Mrs. Seymour may not have then known them to be false.

Thus, the trial court concluded that MPIC was justified in rescinding the contract under section 31A–21–105 because Ms. Seymour's "misrepresentations about her medical history of mental and memory problems and Alzheimer's disease were relied upon by the defendant MPIC and were material to the risk being insured by its long-term care policy"; MPIC would have "rejected her application for insurance" had it known the true facts; and "Mrs. Seymour's undisclosed Alzheimer's disease contributed to her loss and in fact caused her insurance claim."

Ms. Seymour died after filing this action against MPIC. Her son, C. Stan Derbidge, the personal representative of her estate, was substituted as plaintiff and now stands as appellant.

## ISSUES AND STANDARD OF REVIEW

On appeal, Derbidge raises two issues: first, whether the trial court erred in concluding that an applicant's innocent misstatement in an insurance application is a "misrepresentation" under Utah Code Ann. § 31A–21–105(2) (1995), and second, whether MPIC in any event contractually agreed to hold Ms. Seymour's representations in the application to a subjective knowledge-based standard, thereby precluding rescission of the policy for innocent misstatements.

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "Because summary judgment presents only questions of law, we review the trial court's decision under a standard of correctness, according no deference to the trial court's legal conclusions." *Mills v. Brody*, 929 P.2d 360, 362 (Utah Ct.App. 1996). Moreover, while questions of statutory interpretation and the interpretation of unambiguous contractual provisions present questions of law, "in reviewing the trial court's decision, we view the facts in the light most favorable to the losing party." *Id.*

## "MISREPRESENTATION" UNDER SECTION 31A–21–105(2)

The statute at issue provides that

no misrepresentation or breach of an affirmative warranty affects the insurer's obligations under the policy unless:

> (a) the insurer relies on it and it is either material or is made with intent to deceive; or

> (b) the fact misrepresented or falsely warranted contributes to the loss.

Utah Code Ann. § 31A–21–105(2) (1994). The three "statutory alternatives [in section 31A–21–105(2) ] are stated in the disjunctive, not the conjunctive. In order to invalidate a policy because of a misrepresentation by the insured, an insurer need prove applicable only one of the above provisions." *Berger v. Minnesota Mut. Life Ins. Co.*, 723 P.2d 388, 390 (Utah 1986) (per curiam). In other

words, an insurer may rescind a policy if any one of these three provisions is met: (1) the insurer relies on a material misrepresentation made by the applicant; (2) the insurer relies on a misrepresentation that was made by the applicant with the intent to deceive; or (3) the applicant's misrepresentation contributes to the loss. However, while the insurer must show only one of these three provisions has been met, under each alternative a threshold requirement is that the applicant have made a "misrepresentation." Cf. Gatlin v. World Serv. Life Ins. Co., 616 S.W.2d 606, 608 (Tenn.1981) (stating that threshold inquiry under insurance misrepresentation statute is whether applicant has in fact made a misrepresentation). Section 31A–21–105 does not define "misrepresentation." Neither does the extensive definition section of the Utah Insurance Code. See Utah Code Ann. § 31A–1–301 (Supp.1997).

## A. Ambiguity

Whether an innocent misstatement is a "misrepresentation" under section 31A–21–105(2) is apparently an issue of first impression. Derbidge contends that a misstatement becomes a misrepresentation only when the applicant has some level of awareness of the statement's falsity. He argues that while there is no clear authority under the present version of the statute, Utah courts have long required that an applicant have some knowledge of a misstatement before an insurer can claim a misrepresentation and rescind a policy.

In response, MPIC argues that it can rescind the policy if it has satisfied any one of the statute's three prongs and that only the intent-to-deceive prong requires the applicant to have knowledge of the misstatement, which word it takes to be fully synonymous with "misrepresentation." Stated differently, MPIC contends that even an innocent misstatement in an application permits an insurer to rescind a policy if the innocent misstatement is material and relied upon or if the innocent misstatement contributes to the loss. In support of its position, MPIC further argues that interpreting "misrepresentation" to require some knowledge or awareness by the insured renders the statute's intent-to-deceive prong redundant, which in turn contradicts the rule of statutory construction that a statute must be read to give meaningful effect to each of its parts.

■ Thus, we are faced with two constructions of section 31A–21–105(2). The fact that the parties offer differing constructions of the statute, in and of itself, does not mean that the statute is "ambiguous." See Epperson v. Utah State Retirement Bd., 949 P.2d 779, 783 n. 6 (Utah Ct.App.1997). "Ambiguous" means capable of " 'two or more plausible meanings.' " Alf v. State Farm Fire & Cas. Co., 850 P.2d 1272, 1274 (Utah 1993) (quoting Village Inn Apts. v. State Farm Fire & Cas. Co., 790 P.2d 581, 583 (Utah Ct.App.1990)) (emphasis added). See also Belnorth Petroleum Corp. v. Tax Comm'n, 845 P.2d 266, 270 n. 8 (Utah Ct.App.) (stating that when parties each offer plausible statutory interpretations, ambiguity exists), cert. denied, 859 P.2d 585 (Utah 1993); Tanner v. Phoenix Ins. Co., 799 P.2d 231, 233 (Utah Ct.App.1990) ("A statute is ambiguous [only] if it can be understood by reasonably well-informed persons to have different meanings.").

■ When statutory ambiguity exists, we must determine the "legislature's intent in light of the entire statute's purpose." Tanner, 799 P.2d at 233. An ambiguous statute must be interpreted in a reasonable way, with an eye toward the construction that will achieve the best results in practical application, see id.; will avoid "unacceptable consequences," Currier v. Holden, 862 P.2d 1357, 1374 (Utah Ct.App.1993) (Orme, J., concurring in the result), cert. denied, 870 P.2d 957 (Utah 1994); and will be "consistent with sound public policy," Coulon v. Coulon, 915 P.2d 1069, 1071 (Utah Ct.App.1996). Our analysis is further guided by the Legislature's blanket directive that statutes "be liberally construed with a view to effect the objects of the statutes and to promote justice." Utah Code Ann. § 68–3–2 (1996).

## B. Case Law from Other States

We acknowledge that "misrepresentation" has been variously defined in different contexts and that the definitions offered by Der-

bidge and MPIC both seem plausible.[1] We further note a marked split among the states concerning whether an innocent misstatement can justify rescission of an insurance contract. *See* 43 Am.Jur.2d *Insurance* § 1056 at 1059 (1982) (noting split of authority). *Compare William Penn Life Ins. Co. v. Sands,* 912 F.2d 1359, 1362 (11th Cir.1990) (concluding that, under Florida law, if other statutory requirements are met, misstatement need not be made "fraudulently or knowingly to void the policy"), *Royal Am. Managers, Inc. v. International Surplus Lines Ins. Co.,* 760 F.Supp. 788, 793 (W.D.Mo.1991) (applying Missouri law, which permits avoidance of policy " 'even though the misrepresentation is innocently or inadvertently made' ") (citation omitted), *and United Family Life Ins. Co. v. Shirley,* 242 Ga. 235, 248 S.E.2d 635, 637 (1978) (stating that actual knowledge of application misstatement's falsity is not required to prevent insured's recovery under policy), *with Murray v. Montgomery Ward Life Ins. Co.,* 196 Colo. 225, 584 P.2d 78, 80 (1978) (en banc) (requiring insurer to prove that insured made knowing misrepresentation before insurer can rescind policy), *Knysak v. Shelter Life Ins. Co.,* 273 Ill.App.3d 360, 210 Ill.Dec. 30, 652 N.E.2d 832, 837–38 (1995) (holding that innocent misstatement in an application is not a "misrepresentation"), *and Thompson v. Occidental Life Ins. Co.,* 9 Cal.3d 904, 109 Cal.Rptr. 473, 513 P.2d 353, 360 (1973) (holding that if applicant lacks knowledge, incorrect response does not justify rescission of policy).

In *Berger v. Minnesota Mut. Life Ins. Co.,* 723 P.2d 388 (Utah 1986), the Utah Supreme Court noted that Utah's misrepresentation statute is similar or identical to the statutes of, *inter alia,* Colorado, Idaho, Illinois, and Oklahoma. *Id.* at 390 n. 2. *See, e.g.,* Idaho Code § 41–1811 (1991); 215 Ill. Comp. Stat. Ann. 5/154 (West Supp.1997); Okla. Stat. Ann. tit. 36, § 3909 (West 1990). All of these states require something more than an innocent misstatement before an insurer can rescind an insurance policy based on misrepresentations in an application. *See, e.g., Hays v. Jackson Nat'l Life Ins. Co.,* 105 F.3d 583, 588 (10th Cir.1997) (concluding that under Oklahoma law, "a statement made without intent to deceive is not a misrepresentation at all, and thus does not invoke [the misrepresentation statute]");[2] *Murray,* 584 P.2d at 80 (listing requirement that "applicant *knowingly* ma[k]e [a] false statement or *knowingly* conceal[ ] [a] fact" as one of five elements insurer must prove to justify rescission of life insurance policy based on misrepresentations in application) (emphasis added); *Wardle v. International Health & Life Ins. Co.,* 97 Idaho 668, 551 P.2d 623, 626–27 (1976) ("An applicant … must act in good faith to truthfully answer direct questions that call for information *[within] the applicant's knowledge.*") (emphasis added); *Dean v. Nationwide Life Ins. Co.,* 96 Idaho 772, 536 P.2d 1122, 1125 (1975) ("Neither can we hold an insured to absolute strict liability for statements contained in the application which are made in absolute good faith and to the best of his knowledge and belief. . . ."); *Knysak,* 210 Ill.Dec. 30, 652 N.E.2d at 837–38 ("[I]t just does not seem right to hold that an innocent statement can be a misrepresentation or a false warranty.").

In *Knysak,* which construed the Illinois statute,[3] an insurer denied a claim because the plaintiff did not disclose on the application his wife's preapplication diagnosis and treatment for high blood pressure and diabetes. *See id.,* 210 Ill.Dec. 30, 652 N.E.2d at 834–35. The plaintiff argued that he did not know his wife had been so diagnosed and

---

**1.** The trial court regarded the question as a close one, noting at the hearing on the motion for summary judgment: "This is a tough question. It could be I'm incorrect. If so, I suppose the appellate court will give us guidance."

**2.** Oklahoma thus imposes a very high standard for rescission of insurance policies, i.e., that "misrepresentation" itself requires the intent to deceive. Our Supreme Court rejected such a construction in *Berger. See* 723 P.2d at 390–91.

**3.** The statute construed in *Knysak* provides: " 'No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.' " 210 Ill.Dec. 30, 652 N.E.2d at 834 (quoting 215 Ill. Comp. Stat. 5/154 (West 1992) (current version at 215 Ill. Comp. Stat. Ann. 5/154 (West Supp.1997)).

treated and, therefore, that he made no misrepresentations on the insurance application. *See id.*, 210 Ill.Dec. 30, 652 N.E.2d at 835. The *Knysak* court agreed, concluding that an innocent misstatement in an application for insurance was not a "misrepresentation" under the Illinois statute. *See id.*, 210 Ill.Dec. 30, 652 N.E.2d at 837–38.

Similarly, California requires something more than an innocent misstatement to justify rescission of an insurance policy. In *Thompson v. Occidental Life Ins. Co.*, 9 Cal.3d 904, 109 Cal.Rptr. 473, 513 P.2d 353 (1973), the California Supreme Court explained:

> Material misrepresentation or concealment of such facts are grounds for rescission of the policy, and an actual intent to deceive need not be shown. . . .
>
> [However], if the applicant for insurance had no present knowledge of the facts sought, or failed to appreciate the significance of information related to him, his incorrect or incomplete responses would not constitute grounds for rescission.

*Id.*, 109 Cal.Rptr. 473, 513 P.2d at 360. *Accord Miller v. Republic Nat'l Life Ins. Co.*, 789 F.2d 1336, 1339 (9th Cir.1986) (explaining that under California law, "the applicant's knowledge and belief must be considered" and that there is no breach of disclosure duty when applicant is ignorant of relevant facts). *See generally* Lee R. Russ & Thomas F. Sagalla, 6 *Couch on Insurance 3d* § 81.6, at 81–16 to –17 (1996) ("[A] misrepresentation in insurance is an oral or written statement, made by the insured ... to the insurer ... of something as a fact which is untrue, is known to be untrue, and is stated with intent, or has a tendency, to mislead or deceive, or which is stated positively as true without its being known to be true, and which has a tendency to mislead."). The reasoning of the latter authorities is persuasive.

### C. Utah Law

■ In addition to this sound case law from other states, principles enunciated under prior Utah insurance law also appear consistent with the view that, to declare a misrepresentation and rescind an insurance contract, an insurer must show not only that it relied on the statement or that the statement was material, but also that the applicant did something more than make an innocent misstatement.

While Utah's requirements for rescission have evolved somewhat,[4] we note that MPIC has cited no cases—and our own research has unearthed none—where a Utah court has permitted rescission of an insurance policy based only on an innocent misstatement by the insured.

■ The rescission requirements applied under Utah's common law rule better accord with the construction of section 31A–21–105(2) offered by Derbidge. *See generally Moore v. Energy Mut. Ins. Co.*, 814 P.2d 1141, 1144 (Utah Ct.App.1991) (noting harmony between common law and Utah Insurance Code). Interestingly, the issue present-

4. Section 31A–21–105(2) has two statutory predecessors. Utah Code Ann. § 31–19–8(1) (1953) (repealed 1963) provided in pertinent part: "[N]o oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless such misrepresentation or warranty is made with the intent to deceive." This version was replaced by the 1963 statute, which stated:

> All statements and descriptions in any application for an insurance policy or annuity contract, or for the reinstatement or renewal thereof, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:

> (a) fraudulent; or
> (b) material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
> (c) the insurer in good faith either would not have issued the policy or contract, or would not have issued, reinstated or renewed it at the same premium rate, or would not have issued, reinstated, or renewed a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

*Id.* § 31–19–8(1) (1966) (repealed 1985). Note in this version the Legislature's apparent notion that "misrepresentations" and "incorrect statements" are not synonymous.

ed in this case was before the Utah Supreme Court almost eighty years ago in *Chadwick v. Beneficial Life Ins. Co.*, 54 Utah 443, 181 P. 448 (1919), when the Utah Supreme Court adopted the common law rule that, in order to rescind a policy, the insurer had to show that the insured intended to defraud the insurer. The *Chadwick* court noted a split of opinion among the states concerning the effect of innocent misstatements in insurance applications. The Court noted that "[r]espectable authority can be found maintaining the view that false statements made and false answers given by the insured in his application for insurance concerning matters material to the risk will void the policy irrespective of the question of good faith or honest belief on the part of the insured." *Id.* at 451, 181 P. 448. Despite this contrary authority, the *Chadwick* court stated that

> where an insurance company relies upon false statements and answers of the insured as a defense against an action on the policy, it must not only allege ... that the statements and answers are untrue, but also that the *insured knew or should have known them to be untrue at the time he made them.*

*Id.* (emphasis added).[5]

Although the outright intent to deceive is no longer required in all cases, requiring that an applicant have at least some knowledge or awareness of her misstatement is consistent with principles of insurance law enunciated after Utah enacted statutory standards for misrepresentation. As explained in *Long v. United Benefit Life Ins. Co.*, 29 Utah 2d 204, 507 P.2d 375 (1973), general principles of Utah insurance law support the view that something more than an applicant's innocent misstatement is required before an insurer can rescind a policy on the ground of misrepresentation. In *Long*, Justice Crockett explained the rationale for permitting an insur-

er, under certain circumstances, to rescind an insurance policy:

> [T]he insurance company should be able to reject insurance if in its investigation, or in the medical examination, it is found that there exists some sound reason, *known to the applicant* but not to the insurance company, why [the applicant] was not insurable.... E.g., if the insured had a fatal disease, or some affliction which would make him uninsurable, and which fact was concealed from the insurance company, or where there has been any kind of fraud of deception practiced which would make the insurance contract void or voidable.

*Id.*, 507 P.2d at 380 (Crockett, J., concurring) (emphasis added). Thus, the policy justification for permitting rescission centers on the applicant's knowledge of an undisclosed condition, i.e., the insurer is entitled to know what the applicant knows, but cannot reasonably expect to know more by relying only on the applicant.

However, MPIC argues that if, as Derbidge contends, the term "misrepresentation" requires a knowing misstatement under all three prongs of section 31A–21–105(2), the second alternative's requirement of "intent to deceive" would be meaningless because "knowing misrepresentation" and "intent to deceive" share the same meaning. While at first blush this argument seems persuasive, it must be rejected. In *Berger*, the Utah Supreme Court concluded that though an insured's nondisclosure was not fraudulent, it was "knowing and intentional." 723 P.2d at 391. In other words, by concluding that the misrepresentation was knowing and intentional but not made fraudulently, *Berger* makes it implicitly clear that "knowing misrepresentation" and "intent to deceive or defraud" are not synonymous concepts. Also, other sections of the Insurance Code that distinguish these concepts further demon-

---

**5.** MPIC contends that the common law rule must be rejected under Utah Code Ann. § 68–3–2 (1996), which provides that "[t]he rule of the common law that statutes in derogation thereof are to be strictly construed has no application to the statutes of this state. The statutes establish the laws of this state respecting the subjects to which they relate, and their provisions and all proceedings under them are to be liberally con-

strued with a view to effect the objects of the statutes and to promote justice." We see no necessary conflict between the common law rule and section 31A–21–105(2): "Misrepresentation" as used in section 31A–21–105(2) seems susceptible to a construction that is consistent with the common law rule pronounced in *Chadwick*, even without resort to the rule about construction of statutes in derogation of the common law.

strate the difference between misrepresentations made "knowingly" and those made "with the intent to deceive." [6]

### D. Policy Considerations

Finally, construing section 31A–21–105(2) to require something more than an innocent misstatement would be consistent with our statutory obligation to "effect the objects of the statutes and to promote justice." Utah Code Ann. § 68–3–2 (1996). Accordingly, we note that the Utah Insurance Code specifically provides that one of the purposes of the Code is to "ensure that ... claimants ... are

treated fairly and equitably." *Id.* § 31A–1–102(2) (1994). *Accord Tanner*, 799 P.2d at 233. Moreover, "[t]he primary purpose of ... adopting [misrepresentation statutes] is to protect the insured or the insured's beneficiary." 6 *Couch, supra*, § 81.49, at 81–74. Statutes pertaining to representations in insurance contracts "are to be liberally construed against the insurer and in favor of the insured." *Id.* § 81.60, at 81–91 to –92.

Fairness dictates that an insured should not be penalized for misstatements that the insured had no idea were inaccurate. As the Ninth Circuit has noted, "[t]he rationale be-

**6.** Two sections of the Insurance Fraud Act address the concepts of "intent to deceive" and "knowing misrepresentation." The first is section 31A–31–103, which defines "insurance fraud." *See* Utah Code Ann. § 31A–31–103 (1994). Section 31A–31–103(1) states:

(1) A person commits a fraudulent insurance act if that person with intent to deceive or defraud:

(a) knowingly presents or causes to be presented to an insurer any oral or written statement or representation knowing that the statement or representation contains false, incomplete, or misleading information concerning any fact material to an application for the issuance or renewal of an insurance policy, certificate, or contract;

(b) knowingly presents or causes to be presented to an insurer any oral or written statement or representation as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy, certificate, or contract, or in connection with any civil claim asserted for recovery of damages for personal or bodily injuries or property damage, knowing that the statement or representation contains false, incomplete or misleading information concerning any fact or thing material to the claim;

(c) knowingly accepts a benefit from the proceeds derived from a fraudulent insurance act; [or]
...
(e) knowingly supplies false or fraudulent material information in any document or statement required by the department.

Utah Code Ann. § 31A–31–103(1) (1994). Subsections two and three of this section likewise apply a knowledge requirement in conjunction with the intent-to-deceive requirement. *See id.* § 31A–31–103(2)–(3). Thus, this statute clearly contemplates that "intent to deceive" and "knowledge" are distinct concepts which form independent elements of several species of insurance fraud.

Elsewhere in the Insurance Fraud Act, the Legislature defines "knowingly" by adopting the definition provided in the Criminal Code, Utah

Code Ann. § 76–2–103(2) (1995). *See* Utah Code Ann. § 31A–31–102(4) (1994). Here again, the Legislature distinguishes between "intentional" and "knowing" conduct. *See id.* § 76–2–103(1)–(2). Thus, a person acts "knowingly" when, "with respect to his conduct or to circumstances surrounding his conduct[,] ... he is aware of the nature of his conduct or the existing circumstances." *Id.* § 76–2–103(2). In contrast, a person acts intentionally when "it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 76–2–103(1). MPIC's argument is therefore flawed, as section 31A–21–105's sister statutes in the Insurance Fraud Act clearly show that the Legislature considers "intent to deceive" and "knowledge" to be distinct concepts, with the former in no way subsuming the latter. *See Utah County v. Orem City*, 699 P.2d 707, 709 (Utah 1985) (stating statutes are considered to be in pari materia and thus must be construed with reference to one another and harmonized if possible where they relate to same thing or have same purpose).

Based on these provisions of the Insurance Fraud Act, "misstatement," "misrepresentation," and "intent to deceive or defraud" are readily distinguishable. For example, suppose a life insurance applicant answers "no" to an application question asking if the applicant has an organic mental disease or disorder. The applicant would make an innocent "misstatement" in answering "no" if, totally unknown to the applicant, the applicant has an unmanifested brain tumor that has been growing in the applicant's head for several years. The applicant would make a simple "misrepresentation" if the applicant had a brain tumor removed ten years ago, was told at that time that there was an 80% chance it would recur in the next decade, and justifies the negative response by reasoning that she has always been lucky and therefore most likely does not currently have any such brain disorder. Finally, the applicant would make a misrepresentation with the "intent to deceive" if the applicant knows she has a malignant brain tumor, knows she has only two months to live, and knows her insurance application will be rejected if she discloses the disease.

hind [requiring something more than innocent misstatement to rescind an insurance policy] is simple and straightforward. It would be 'patently unfair' to allow the insurer to avoid its obligations under the policy on the basis of information that the applicant did not know, or alternatively, did not fully understand." *Miller*, 789 F.2d at 1340 (citation omitted). Moreover, we agree with the Illinois Court of Appeals, which explained that the words " 'misrepresentation or false warranty' denote some deceit," *Knysak*, 210 Ill.Dec. 30, 652 N.E.2d at 836, as opposed to innocent misstatements, which denote good faith. *Cf.* Utah R. Civ. P. 60(b)(3) (listing, as one reason for granting relief from a judgment or order, "fraud . . ., misrepresentation or other *mis* conduct") (emphasis added). Concluding that an innocent misstatement constitutes a "misrepresentation" that justifies rescission of an insurance policy would, we believe, contravene our statutory mandate of ensuring that "claimants . . . are treated fairly and equitably." Utah Code Ann. § 31A–1–102(2) (1994). *Accord Tanner*, 799 P.2d at 233.

In addition to our concern for unfairness to insureds, we must also be sensitive to the "unacceptable consequences," *Currier*, 862 P.2d at 1374 (Orme, J., concurring in the result), of MPIC's construction of the statute, with an eye to achieving the best result in practical application, *see Tanner*, 799 P.2d at 233. Construing "misrepresentation" to embrace innocent misstatements would lead to the disquieting consequence of potentially large numbers of good-faith insurance applicants having their policies rescinded because they suffer from undiagnosed and/or unmanifested pre-existing conditions. As powerfully stated by the *Knysak* court,

> we are dying the minute we are born. Kidneys, hearts, intestines, livers, and backs may be in a terrible condition unbeknownst to anyone. In the past few decades, we have discovered through advances in medicine that people are predisposed to having certain diseases or defects because

of their genes. A person could have congenital heart problems, a predisposition towards diabetes, cancer, lupus, Huntington's disease, schizophrenia, and even alcoholism, all of which would materially affect the acceptance of the risk assumed by the insurer. Arthur Ashe and "Magic" Johnson contracted AIDS that went undetected for some time. People in power plants are just now dying 20 years after exposure to asbestos. Many diseases and mental and physical defects do not manifest themselves for years. Yet, when the disease or defective organ comes to light after the application for insurance, the insured may suddenly discover that his safety net does not exist.

210 Ill.Dec. 30, 652 N.E.2d at 837. It would not accord with fairness or the Insurance Code's purposes to pull the safety net from beneath an insured who makes an innocent misstatement in an application.

We note that insurers can, to some degree, avoid being surprised by claims stemming from conditions that would have led to denial of an application in the first place. No law requires insurers to limit the source of their information to the insurance applicant. Specifically, insurers can require applicants to release their medical records or have a physical examination. This case is a prime example. In Ms. Seymour's application for insurance, MPIC required her to agree to a broad release of her medical records to MPIC.[7] However, MPIC did not examine Ms. Seymour's records until she filed a claim. Had MPIC checked Ms. Seymour's medical records before issuing the policy, it would have discovered Dr. Hughes's diagnosis even if unknown to Ms. Seymour. While we recognize that it may be cost-prohibitive for an insurer to conduct in-depth investigations of all applicants' medical records or to require physical examinations of all applicants, in this case even a cursory review of Ms. Seymour's records would likely have revealed her memory problems.

---

7. The application provides:

I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organization, institution or person, that has any record or knowledge of me or my health, to give to the Mutual Protective/Medico Life Insurance Companies any such information. . . .

## CONCLUSION

For all of the foregoing reasons, we believe the statute contemplates at least some level of knowledge or awareness of a misstatement to make it a misrepresentation. We need not say precisely what the level is in this case, for viewing the facts in the light most favorable to plaintiff, as we must, Ms. Seymour made the misstatements about not having an organic mental condition, and not being hospitalized or treated for any reason other than the blood-pressure condition she disclosed, in complete innocence. If the fact finder ultimately believes plaintiff's version of the facts, then Ms. Seymour, in making her innocent misstatements, made no "misrepresentations" under section 31A–21–105(2).

It follows that the summary judgment must be reversed.[8] The case is remanded for trial or such other proceedings as may now be in order.

BENCH and GREENWOOD, JJ., concur.

---

8. It also follows that we have no need to consider plaintiff's alternative argument that the terms of her policy entitle her to relief even if we reject her statutory argument.