1999 Utah Ct. App. 344

**PROVO CITY, Plaintiff and Appellee,**

v.

**David G. CANNON, Defendant and Appellant.**

No. 981194–CA.

Court of Appeals of Utah.

Dec. 2, 1999.

Thomas H. Means, Aldrich Nelson Weight & Esplin, Provo, for Appellant.

Vernon F. Romney, Provo City Attorney's Office, Provo, for Appellee.

Before GREENWOOD, JACKSON, and ORME, JJ.

1. Section 76–5–109 was amended in 1997, 1998, and again in 1999. No substantive changes were made in any of these amendments; we therefore cite to the most recent version of this statute, even though defendant was charged with the offense on January 7, 1997.

2. Defendant was charged under subsection (3) of the child abuse statute, which states:

Any person who inflicts upon a child physical injury or, having the care or custody of such child, causes or permits another to inflict physical injury upon a child is guilty of an offense as follows:

## OPINION

GREENWOOD, Associate Presiding Judge:

¶ 1 Defendant David Cannon appeals his conviction for child abuse, a class A misdemeanor, in violation of Utah Code Ann. § 76–5–109 (1999).[1] We conclude the trial court properly applied the statute and affirm his conviction.

## BACKGROUND

¶ 2 On March 13, 1996, defendant held the nine-month-old son of Christine Armstrong over the railing of defendant's Third-story apartment balcony. Several witnesses observed the incident, including defendant's wife, Cami, who told defendant to stop. Defendant then pulled the child back over the railing, and a neighbor took the baby from defendant.

¶ 3 Christine Armstrong, accompanied by two witnesses, went to the Provo City Police Department on April 23, 1996, to report the incident. Sergeant Gary Hodgson met with the women and subsequently interviewed defendant concerning the allegations. On May 24, 1996, defendant voluntarily submitted to questioning and denied the allegations.

¶ 4 Based on the witnesses' statements made during Sergeant Hodgson's investigation, the county attorney filed child abuse charges against defendant under section 76–5–109 of the Utah Code.[2] At trial, defendant moved to dismiss the charges after the State presented its case, arguing the State had offered no evidence of a physical injury as required by the statute. The trial court denied the motion,[3] and defendant rest-

(a) if done intentionally or knowingly, the offense is a class A misdemeanor;
(b) if done recklessly, the offense is a class B misdemeanor; or
(c) if done with criminal negligence, the offense is a class C misdemeanor.

Utah Code Ann. § 76–5–109(3) (1999).

3. In denying defendant's motion for a directed verdict, the trial court stated:

Well, as I read the statute, I find that physical injury as defined in subsection (4) of that paragraph, as [the Deputy County Attorney] has referred to it, as any other condition which

ed without presenting a defense. The trial court then convicted defendant of one count of class A misdemeanor child abuse.[4] Defendant appeals, arguing the trial court erred by ruling his conduct fell within the purview of the child abuse statute.

## ANALYSIS

¶ 5 The precise issue before us is whether the trial court correctly determined that Utah's child abuse statute and its definition of "physical injury" can be applied to the facts of this case. Defendant contends the State presented no evidence establishing a physical injury or an impairment to the child's physical condition. Our analysis is thus limited to whether defendant "imperil[ed] the child's health or welfare" even though there was no physical impact on the child. "The interpretation of a statute is a question of law, which we review for correctness." *State v. Lowder*, 889 P.2d 412, 413 (Utah 1994) (citing *State v. Larsen*, 865 P.2d 1355, 1357 (Utah 1993)).

■ ¶ 6 When "construing a statute, our primary purpose ' "is to give effect to the intent of the legislature in light of the purpose the statute was meant to achieve." ' " *Wilson v. Valley Mental Health*, 969 P.2d 416, 418 (Utah 1998) (citations omitted). In doing so, we assume "the Legislature used each term advisedly, and we give effect to each term according to its ordinary and accepted meaning." *Versluis v. Guaranty Nat'l Cos.*, 842 P.2d 865, 867 (Utah 1992). "[W]e look first to [the statute's] plain language as the best indicator of the legislature's intent and purpose in passing the statute. Only if that language is ambiguous do we turn to a consideration of legislative history and relevant policy considerations." *Wilson*, 969 P.2d at 418 (citation omitted); *see also* Utah Code Ann. § 76–1–106 (1999) ("The rule that a penal statute is to be strictly construed shall not apply to this

code.... All provisions of this code ... shall be construed according to the fair import of their terms...."); *In re K.T.S.*, 925 P.2d 603, 604 (Utah Ct.App.1996). That the parties disagree about the meaning of a statute does not necessarily make the statute ambiguous. *See Derbidge v. Mutual Protective Ins. Co.*, 963 P.2d 788, 791 (Utah Ct.App. 1998). " 'A statute is ambiguous [only] if it can be understood by reasonably well-informed persons to have different meanings.' " *Id.* (alteration in original) (quoting *Tanner v. Phoenix Ins. Co.*, 799 P.2d 231, 233 (Utah Ct.App.1990)).

¶ 7 The statute in question, section 76–5–109 of the Utah Code, prohibits the intentional, knowing, reckless, or criminally negligent infliction of a physical injury on a child. *See* Utah Code Ann. § 76–5–109(3). Subsection (1)(c) of that statute defines "physical injury" as:

> an injury to or condition of a child which impairs the physical condition of the child, including:
>
> (i) a bruise or other contusion of the skin;
>
> (ii) a minor laceration or abrasion;
>
> (iii) failure to thrive or malnutrition; or
>
> (iv) *any other condition which imperils the child's health or welfare* and which is not a serious physical injury as defined in subsection (1)(d).

(Emphasis added.)

¶ 8 A separate provision of the statute defines "serious physical injury," in part, as:

> any physical injury or set of injuries which seriously impairs the child's health, or which involves physical torture or causes serious emotional harm to the child, or which involves a substantial risk of death to the child, including:
>
> ....
>
> (vii) any conduct toward a child which results in severe emotional harm, severe developmental delay or retardation, or severe

imperils, and the other condition in this instance may well be the condition of placing the child over the railing, which would imperil the child's health or welfare. That is a factor of the physical injury as defined by the statute.

4. Defendant urges us, alternatively, to conclude his conduct was either reckless or negligent and

reduce his conviction to a class B or C misdemeanor. His argument on this point, however, consisted of a one-sentence footnote at the end of his appellate brief. We therefore decline to address it. *See* Utah R.App. P. 24(a)(9); *State v. Wareham*, 772 P.2d 960, 966 (Utah 1989).

impairment of the child's ability to function;

. . . .

(x) any conduct which results in starvation or failure to thrive or malnutrition that jeopardizes the child's life.

Utah Code Ann. § 76–5–109(1)(d) (1999).[5]

¶ 9 Defendant argues that, under the statute's scheme, the plain meaning of "physical injury" requires a physical impact on a child. Specifically, he points to the examples of physical injuries listed in subsections (1)(c)(i), (ii), and (iii)—each of which involves a physical impact—and argues that the meaning of "imperil" in subsection (1)(c)(iv), to be consistent with the other subsections, must require a physical impact. Because the State presented no evidence that defendant's conduct had a physical impact on the child, defendant contends he did not imperil the child's health or welfare and thus his conviction cannot stand.

¶ 10 We first acknowledge that the Legislature has the power to define statutory terms as it wishes, and we are bound by those definitions. *See* 1A Norman J. Singer, *Sutherland Statutory Construction* § 20.08 (5th ed. 1993 & Supp.1999) (citing *McWhorter v. State Bd. of Registration for Prof'l Eng'rs*, 359 So.2d 769 (Ala.1978)). Even if the chosen definition in this case "does not coincide with the ordinary meaning of the words," *id.*, the definition is not "arbitrary, [does not] result in unreasonable classifications [and is not] uncertain." *Id.* (citations omitted). Furthermore, the definition is consistent with the rest of the statute as a whole and its general purpose, "which is to curb the increase in child abuse by imposing stiffer penalties on child abusers." *State v. Jones*, 735 P.2d 399, 402 (Utah Ct.App.1987) (citation omitted). The Legislature's chosen language defining "physical injury" therefore controls the meaning of that term throughout

the statute.[6] *See* Sutherland Stat. Constr. § 20.08, at 90.

¶ 11 We do not read the statutory definition as requiring some physical impact in order to imperil a child's health or welfare. Nowhere in the statute does the Legislature indicate physical injury is limited only to conditions resulting from a physical impact. In fact, the opposite is true. The statute's definition of "serious physical injury" includes injuries that can result from nonphysical abuse. *See* Utah Code Ann. § 76–5–109(1)(d)(vii) ("any conduct toward a child which results in severe emotional harm, severe developmental delay or retardation, or severe impairment of the child's ability to function"); *id.* at § 76–5–109(1)(d)(x) ("any conduct which results in starvation or failure to thrive or malnutrition that jeopardizes the child's life"). Likewise, under the Legislature's definitional rubric, "physical injury" may include conditions that are not the result of physical impact.

¶ 12 Our reading of subsection (1)(c) comports with our previous declaration about these definitions. In *Jones*, the defendant argued that "physical injury" and "serious physical injury," as defined by the statute, were "two totally self-standing and independent concepts." 735 P.2d at 402 n. 3. We rejected that notion, stating the definitions were part of "an integrated and carefully drawn statute," especially because "the text introducing the definitions makes clear that the definitions are to be used throughout the entire statutory section." *Id.*

¶ 13 The statute, however, does not define "imperil"; we thus look to the term's ordinary and accepted meaning. *See Versluis*, 842 P.2d at 867. *Webster's* defines "peril" as "exposure to the chance of injury," *Webster's Dictionary* 581 (New Rev. Updated Ed.1999), and "imperil" as to "endanger." *Id.* at 418.[7] Endangerment is precisely what

---

5. The determination of whether a defendant inflicts "physical injury" or "serious physical injury" also determines the degree of offense. A defendant who inflicts serious physical injury can be charged with a greater degree of criminal liability, ranging from a class A misdemeanor for criminally negligent conduct to a second degree felony for intentional or knowing conduct. *See* Utah Code Ann. § 76–5–109(2) (1999).

6. Because we conclude the statute's language is not ambiguous, we need not consider the Legislature's intent in passing section 76–5–109. *See Wilson*, 969 P.2d at 418.

7. We note that our reading of "endangerment" is in line with other jurisdictions' interpretations of statutes using the term. *See, e.g., State v. Deskins*, 152 Ariz. 209, 731 P.2d 104, 105–06 (App.

the trial court found occurred in this case when defendant, for some unfathomable reason, suspended an infant by his arms over a third-story balcony railing for several minutes. Defendant does not challenge the trial court's finding that this conduct imperiled the child, given the definition approved by this court and applied by the trial court.

¶ 14 Thus, under Utah's child abuse act, physical injury can include acts that imperil or threaten a child's health or welfare without an actual physical impact on the child. Consequently, we affirm defendant's conviction.

¶ 15 I CONCUR: NORMAN H. JACKSON, Judge.

¶ 16 I CONCUR IN THE RESULT: GREGORY K. ORME, Judge.

