STATE of Utah, Plaintiff and
Respondent,

v.

Roy M. HELM, Defendant and Appellant.

No. 14589.

Supreme Court of Utah.

April 25, 1977.

Robert M. McRae, Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., William T. Evans, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

On March 26, 1976, the defendant was convicted by a jury of the crime of tampering with evidence in violation of Section 76–8–510, U.C.A.1953, quoted below. The statutory sentence was imposed on April 19, 1976, and the defendant was placed on probation.

Seeking reversal of his conviction, the defendant contends (1) that the State did not prove that he violated the statute and (2) that two of the State's witnesses were, in fact, co-conspirators and thus accomplices in the crime charged, and that there was not sufficient corroboration of their testimony to justify his conviction. In the alternative, defendant argues that even if he was lawfully convicted, the sentence should be vacated since the trial court did not impose sentence within ten days of the date of the verdict and thus lost its jurisdiction to sentence him.

On the night of September 14, 1974, Highway Patrolman Owen Busch stopped a vehicle driven by one Willard Eccles. He jotted down some notes of what he had observed and had Mr. Eccles perform some sobriety tests. He recorded the results, took Mr. Eccles to the officer's vehicle, turned on a tape recorder and then arrested Mr. Eccles for driving under the influence of alcoholic beverages. After contacting his immediate supervisor, Sergeant Odell Hatch, for assistance, Officer Busch recorded an interview with Mr. Eccles and wrote a traffic citation. When Sergeant Hatch arrived, Mr. Eccles identified himself as the Chairman of the Highway Patrol Civil Service Commission, a fact which Sergeant Hatch knew to be true. After making arrangements to have his car impounded, the two officers then took Mr. Eccles to the Sheriff's Office in Farmington.

Upon arriving there, Mr. Eccles attempted to phone the Commissioner of Public Safety, but was unable to reach him. He then called the home of the defendant, Roy M. Helm, Superintendent of the Highway Patrol. A few minutes later, Mr. Helm returned the call and asked to talk to Mr. Eccles. After speaking with the defendant,

Mr. Eccles handed the phone to Officer Busch. The defendant asked him to leave that room and have the conversation on a different phone. The defendant mentioned to Officer Busch Mr. Eccles' position and asked if anyone saw Mr. Eccles being brought into the sheriff's office. When the officer said no, the defendant directed Officer Busch to bring Mr. Eccles and meet him (the defendant) in the parking lot of a bank in Bountiful.

The two officers and Mr. Eccles drove to the bank. When the defendant arrived, Officer Busch left his vehicle and spoke with the defendant in his automobile. At that time, the defendant asked Officer Busch what evidence had been obtained against Mr. Eccles. The officer went to his car, got his notes and the tape recording and brought them to the defendant's car. After examining the notes, the defendant asked Officer Busch to tell Sergeant Hatch that he wished to speak with him. Officer Busch left the notes and tape on the seat of the defendant's car: The defendant then asked Sergeant Hatch if he or Officer Busch would be offended if he (the defendant) took Mr. Eccles home. Sergeant Hatch replied that they would not. The two officers talked further with the defendant Helm, who again spoke about Mr. Eccles' position and repeated his question as to whether they would be offended if they just left the matter for him to handle. They deferred to his request and left Mr. Eccles and the evidence with the defendant. Nothing further was seen or heard of the evidence or the incident until 15 months later, when this whole episode was brought to light pursuant to other troubles involving this defendant, not material to recite here.

· The statute under which the defendant was charged and convicted is Section 76–8–510, U.C.A.1953:

A person commits a felony of the second degree if, believing that an official proceeding or investigation is pend-ing or about to be instituted, he: (1) Alters, destroys, *conceals, or removes* anything with a purpose to impair its verity or availability in the proceeding or investigation. [Emphasis added].

■ In regard to the defendant's contention that the proof does not show that he violated that statute, it is to be borne in mind that in our review on appeal we are obliged to survey the evidence in the light favorable to the jury's verdict and that this includes any reasonable inferences that may fairly be drawn therefrom.[1] This principle should not be employed to fasten criminality upon innocent conduct, but its use should be in the pursuit of truth. Conduct of the character here charged is usually carried on with such secrecy as can be achieved, as is true of most crimes. In the absence of complete eye-witness observation of such secret doings, it is necessary to piece together the truth from the facts shown and any such justifiable inferences. When this is done with sufficient certainty to convince reasonable and fair minded jurors beyond a reasonable doubt of the facts, that is what the law requires.

■ Reflection upon the activities delineated above shows that it was done with the to be expected attempt at secrecy. The basic and immutable facts are: that there was an official investigation under way; that the defendant Helm took possession of evidence relating to it; and that nothing further was seen or heard of it until fifteen months later, when this whole episode was learned about as recited above.[2] Any argument that fair minded jurors could not reasonably believe that the defendant "concealed or removed" that evidence does not seem to harmonize with ordinary experience and common sense.

■ Defendant's urgence that Officer Busch and Sergeant Hatch were accomplices whose testimony required corroboration as provided by Sec. 77–31–18, U.C.A.

---

1.  *State v. Jones*, Utah, 554 P.2d 1321 (1976); *State v. Schad*, 24 Utah 2d 255, 470 P.2d 246 (1970); *State v. Sinclair*, 15 Utah 2d 162, 389 P.2d 465 (1964).

2.  When this affair and evidence came to light fifteen months later, Mr. Eccles pled guilty to the charge.

1953, is likewise predicated upon defendant's own view of the evidence most favorable to his own contention; and in this instance strained considerably beyond that. To establish that predicate, it would have to appear that the officers knowingly, voluntarily and intentionally united with the defendant and aided, abetted, or encouraged in the commission of the crime.[3] Moreover, the mere presence where a crime is being committed, or about to be committed, without such an intent to join therein, being shown, is not sufficient to find that one is an accomplice.[4]

■ Contrary to defendant's contention, the reasonable conclusion which the jurors could and did draw was in accordance with the officers' testimony: that they were merely acquiescing in orders of their superior officer. There is certainly no basis upon which it can be said that those two were even aware of just what defendant Helm may have had in mind about concealing or otherwise dealing with the evidence, much less that they must be regarded as accomplices in that they voluntarily joined in the project of concealing it.

■ Finally, the defendant argues that, since Sec. 77–35–1, U.C.A.1953, provides that after a guilty verdict "the court must appoint a time for pronouncing judgment, which must be at least two days and not more than ten days after the verdict," the trial court lost jurisdiction to sentence him because the verdict was rendered on March 26, 1976 and the sentence was imposed on April 19, 1976. There can be no doubt about the desirability of compliance with that statute. But to argue that the court loses jurisdiction entirely is quite another matter. It requires no exposition thereon to demonstrate what egregious injustices might result because of some inadvertence, error or omission if such were the case, especially so in cases where serious crimes may have been committed.

■■ There are two observations to be made about this contention of the defendant: The first is that this statute should be viewed in harmony with the general rule of statutory construction: that it should be interpreted and applied in light of its purpose. That purpose was that there should be no undue or unreasonable delay in the pronouncement of the sentence, particularly that there should be no imposition of hardship on the defendant or prejudicial effect upon his rights. Consistent with what has been said, we think the view which is sound and which comports with the requirements of justice is that the limits so prescribed in the statute are not mandatory and jurisdictional, but are directory;[5] and that where the sentence is imposed within a reasonable time so that there is no abuse of the court's powers nor adverse effects upon the defendant, he should not be entitled to go free, but should be entitled to have the correct sentence imposed upon him, with due consideration given to any time he may have served because of the delay.

■ The second difficulty with the defendant's position is that where there is a reasonable extension of time for sentencing, made either at the defendant's request, or with his consent, or where it appears that it was calculated to be for his possible benefit in determining whether he should be placed on probation,[6] as was the result here, the failure of the court to impose sentence within the statutory time should not be grounds for the defendant's release, but should be treated in the same manner as just recited above.

Affirmed. No costs awarded.

ELLETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.

3. *State v. Georgopoulos*, 27 Utah 2d 53, 492 P.2d 1353 (1972).

4. *State v. Gee*, 28 Utah 2d 96, 498 P.2d 662 (1972); *State v. Fertig*, 120 Utah 224, 233 P.2d 347 (1951).

5. *State v. Fedder*, 1 Utah 2d 117, 262 P.2d 753 (1953). See also *State v. Young*, 112 Ariz. 361, 542 P.2d 20 (1975); *State v. Valenzuela*, 23 Ariz.App. 608, 535 P.2d 28 (1975).

6. *State v. Saxton*, 30 Utah 2d 456, 519 P.2d 1340 (1974).