1999 UT App 197

STATE of Utah, Plaintiff and Appellee,

v.

Donald Arthur HARLEY, Defendant and Appellant.

No. 981003–CA.

Court of Appeals of Utah.

June 17, 1999.

Wesley M. Baden, Vernal, for Appellant.

Jan Graham, Atty. Gen., and Laura B. Dupaix, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before WILKINS, P.J., JACKSON and ORME, JJ.

## OPINION

JACKSON, Judge:

¶1 Donald Arthur Harley appeals his convictions for aggravated burglary, in violation of Utah Code Ann. § 76–6–203 (1995); two counts of aggravated kidnaping, in violation of Utah Code Ann. § 76–5–302 (Supp. 1998); possession of a handgun by a restricted person, in violation of Utah Code Ann. § 76–10–503(3)(a) (Supp.1998); and tampering with evidence, in violation of Utah Code Ann. § 76–8–510 (1995). We affirm.

## BACKGROUND

¶2 We recite the facts in a light most favorable to the jury's verdict. *See State v. Gordon,* 913 P.2d 350, 351 (Utah 1996). Late one night, Betty Jenkins saw headlights approaching her home in Vernal, Utah. Her husband, Ted Jenkins, went out the back door to see who had driven up. When the front door bell rang a few moments later, Mrs. Jenkins asked who was at the door and heard a voice ask for Ted Jenkins. Not realizing that her husband had left through the back door, Mrs. Jenkins unlocked the front door, but found no one there. She then heard the same voice yell, "He's out back." Mrs. Jenkins did not know that anything was amiss, so she locked the front door and went back to watching television.

¶3 In the meantime, Mr. Jenkins saw a light colored van parked near the street, facing the highway. He then saw Harley approach the front gate of the house. Mr. Jenkins called out to Harley, and Harley approached him. Mr. Jenkins then saw Harry Gooch come through the front gate. Gooch approached Mr. Jenkins as if to shake hands, but then circled around to Mr. Jenkins's back. Harley told Mr. Jenkins that he had some gold coins that Mr. Jenkins might want to buy. Although Mr. Jenkins said he was not interested in buying any coins, Harley persisted, and asked to go into the Jenkins's home.

¶ 4 When Mr. Jenkins again refused, Harley grabbed his left arm, pinning it behind his back, and tried to grab his right arm. They struggled, and Harley shouted, "This is a robbery. Get them damn hands behind your back." Mr. Jenkins then yelled, hoping to alert his son, Darrell Jenkins, who lived next door. At this point, either Harley or Gooch hit Mr. Jenkins, and Mr. Jenkins fell to the ground with blood running down his head. Harley and Gooch then pushed Mr. Jenkins against the garage door and held him there.

¶ 5 Darrell Jenkins arrived to see his father pinned against the garage door. Mr. Jenkins shouted that the intruders were armed and he was being robbed. Gooch then turned and pointed a gun at Darrell Jenkins, who repeatedly stated that they would cooperate and give the intruders whatever they wanted. At this point, Gooch seemed to be nervous, and tried to persuade Harley to flee. Harley, however, insisted that they enter the Jenkins's home. Harley and Gooch then marched the Jenkinses roughly fifteen feet to the back door. While they were walking, Darrell Jenkins saw that Harley was wearing latex gloves and carrying a .22 magnum caliber revolver.

¶ 6 Mr. Jenkins unable to enter the back door because his wife had heard the commotion, looked outside to see her husband struggling with the intruders, locked the back door, and called 911. Gooch, who was becoming more nervous, again said that he wanted to leave, but Harley repeatedly demanded to be let into the house. Gooch then left without Harley. Harley lowered the gun and followed Gooch out the front gate.

¶ 7 Darrell Jenkins saw the light colored van drive away, and he got in his own van to follow Harley and Gooch. Darrell called the police on his cell phone, and the police were able to intercept Harley and Gooch. When the officer who was following them turned on his lights and siren, he saw a pistol fly out of the van's passenger window. The van continued about another 600 feet before pulling over. With guns drawn, the officers ordered the occupants out of the van. Gooch left the van from the passenger door, and Harley came out the driver's side. A search of Harley's pockets disclosed a black ski mask, two sets of handcuffs, two four-foot-long ropes, a small flashlight, twelve .22 caliber bullets, a handcuff key, and extra batteries for the flashlight. In the van, the officers found a pair of latex gloves turned inside out, a roll of duct tape, and a slip of paper bearing Ted Jenkins's name and address in Harley's handwriting.[1] The police also found the .22 caliber gun in an area near where the officer had seen it thrown from the van. The gun was muddy and revealed no fingerprints.

¶ 8 After a jury trial, Harley was convicted of aggravated burglary, two counts of aggravated kidnaping, possession of a handgun by a restricted person,[2] and tampering with evidence. On appeal, Harley argues the aggravated burglary statute requires proof that the actor entered or remained unlawfully in a building, and that an attempted entry does not rise to the level of aggravated burglary. He further contends that Jury Instruction 18, which instructed the jury that time and distance are not elements of aggravated kidnaping, was erroneous. Harley also challenges the sufficiency of the evidence supporting his convictions for possession of a dangerous weapon and tampering with evidence.[3]

## ISSUES AND STANDARDS OF REVIEW

¶ 9 Whether the aggravated burglary statute, Utah Code Ann: § 76–6–203 (1995), requires entry into a building is a question of law which we review for correctness. *See State v. Harmon,* 910 P.2d 1196, 1199 (Utah 1995). Whether the trial court properly instructed the jury that time and distance are not elements of aggravated kidnaping is also

---

**1.** Harley was given the Jenkinses name by an associate in Rock Springs, Wyoming, who claimed that they kept a large quantity of cash—some three million dollars—in their home.

**2.** Harley stipulated at trial that he had a prior felony conviction.

**3.** We have considered Harley's other arguments on appeal and conclude they are without merit. *See State v. Carter,* 776 P.2d 886, 889 (Utah 1989).

reviewed under a correctness standard. *See State v. Stringham,* 957 P.2d 602, 608 (Utah Ct.App.1998). Finally, we will reverse a conviction for insufficient evidence only when the evidence is "so inconclusive or so inherently improbable that 'reasonable minds must have entertained a reasonable doubt' that the defendant committed the crime." *State v. Goddard,* 871 P.2d 540, 543 (Utah 1994) (quoting *State v. Petree,* 659 P.2d 443, 444 (Utah 1983)).

### ANALYSIS

#### I. Aggravated Burglary

■ ¶ 10 Harley contends that aggravated burglary always requires proof that an actor entered or remained unlawfully in a building. It is well settled that "'[w]hen faced with a question of statutory construction, we look first to the plain language of the statute.'" *State v. Rudolph,* 970 P.2d 1221, 1229 (Utah 1998) (alteration in original) (quoting *Stephens v. Bonneville Travel, Inc.,* 935 P.2d 518, 520 (Utah 1997)). We "resort to other methods of statutory interpretation only if the language is ambiguous." *State v. Masciantonio,* 850 P.2d 492, 493 (Utah Ct. App.1993). The aggravated burglary statute provides:

> (1) A person is guilty of aggravated burglary if in *attempting,* committing, or fleeing from *a burglary* the actor or another participant in the crime:
>
>> (a) causes bodily injury to any person who is not a participant in the crime;
>>
>> (b) uses or threatens the immediate use of a dangerous weapon against any person who is not a participant in the crime; or
>>
>> (c) possesses or attempts to use any explosive or dangerous weapon.

Utah Code Ann. § 76–6–203 (1995) (emphasis added).[4] By its plain language, the statute applies not only to completed burglaries, but also to attempted burglaries. As we see no ambiguity in the statute's language, our analysis is complete. *See Masciantonio,* 850 P.2d at 493. Accordingly, we hold that section 76–6–203 does not require proof that an actor entered or remained unlawfully in a building to convict for aggravated burglary.

#### II. Aggravated Kidnaping

■ ¶ 11 Harley next argues that Jury Instruction 18 was an incorrect statement of the law. He contends he should have been allowed to argue that the brief length of time the Jenkinses were detained, as well as the short distance they were transported to the back door, were factors to consider in determining whether an aggravated kidnaping occurred. We disagree. As Instruction 18 correctly informed the jury, "[n]owhere does [the aggravated kidnaping] statute require the victim be detained or restrained for *any* period of time before the crime of aggravated kidnapping occurs." *State v. Perry,* 899 P.2d 1232, 1242 (Utah Ct.App.1995). By its plain language, the aggravated kidnaping statute applies to any seizure, confinement, or detention, and does not require such seizure, confinement, or detention to be of any particular length of time or for any specified distance. *See* Utah Code Ann. § 76–5–302 (1995). Accordingly, we will not look beyond the statute's plain language.[5] *See Masciantonio,* 850 P.2d at 493.

#### III. Sufficiency of the Evidence

¶ 12 Finally, Harley challenges the sufficiency of the evidence supporting his convictions for possession of a handgun by a restricted person, *see* Utah Code Ann. § 76–10–503(3)(a) (Supp.1998), and tampering with evidence, *see* Utah Code Ann. § 76–8–510 (1995). "'Where there is any evidence, including reasonable inferences that can be drawn from it, from which findings of all the elements of the crime can be made beyond a

---

4. Harley was charged under subsections (a) and (b).

5. Because Harley failed to argue below that detention is inherent in aggravated burglary and thus he could not also be convicted of aggravated kidnaping, this argument was waived. *See State v. Winward,* 941 P.2d 627, 633 (Utah Ct.App.

1997). Harley has failed to show any grounds on which we could find plain error. *See id.* Moreover, Rule 22(e) of the Utah Rules of Criminal Procedure does not allow us to reach this issue, as that rule applies only when the challenge is to a sentence, rather than to the underlying conviction. *See State v. Brooks,* 908 P.2d 856, 859 (Utah 1995).

reasonable doubt, our inquiry is complete and we will sustain the verdict.'" *State v. Goddard,* 871 P.2d 540, 543 (Utah 1994) (quoting *State v. Gardner,* 789 P.2d 273, 285 (Utah 1989)). Our thorough review of the record confirms that a jury could reasonably conclude that defendant possessed a· dangerous weapon and tampered with evidence.

## CONCLUSION

¶ 13   We hold that under the plain language of section 76–6–203, an unlawful entry or remaining in a building is not a necessary element of aggravated burglary. We reiterate that the time and distance of a detention are not elements of aggravated kidnaping under section 76–5–302. Finally, we con-

clude the State presented sufficient evidence to support the jury's verdict on the possession of a dangerous weapon and tampering with evidence charges.

¶ 14   Affirmed.

¶ 15   WE CONCUR: MICHAEL J. WILKINS, Presiding Judge, and GREGORY K. ORME, Judge.