2000 Utah Ct. App. 136

**STATE of Utah, Plaintiff and Appellee,**

v.

**Joseph GONZALES, Defendant and Appellant.**

**No. 990147–CA.**

Court of Appeals of Utah.

May 11, 2000.

---

Shelden R. Carter, Harris & Carter, Provo, for Appellant.

Jan Graham, Attorney General and Catherine M. Johnson, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and ORME.

## OPINION

BILLINGS, Judge:

¶ 1 Joseph Gonzales (defendant) appeals his conviction for tampering with evidence in violation of Utah Code Ann. § 76–8–510 (1999). We reverse.

## FACTS

¶ 2 "On appeal, we recite the facts in the light most favorable to the jury's verdict." *State v. Burk*, 839 P.2d 880, 882 (Utah Ct.App.1992).

¶ 3 In the early morning hours of August 17, 1997, defendant was riding in a car with three others in Orem, Utah. Defendant was in the back seat of the two-door car with Tug Todd. Christopher Hicks was driving, and Brad Norton was in the front passenger seat. Hicks followed another car through Orem, and, using a semi-automatic pistol, shot several rounds out of the driver's side window at the other car. The other car's occupants called the police to report the shooting.

¶ 4 The shots woke Todd, asleep in the back. Todd saw Hicks pull his arm in the window after firing the shots. After the shooting, Hicks headed toward the freeway. While stopped at a stop light, Hicks saw a police officer at the intersection. He then reached over and tossed the gun in the glove compartment of the car, making some comment about hoping not to be pulled over. He then continued onto the freeway.

¶ 5 Once on the freeway, the car was followed by police cars from Orem and Pleasant Grove. Eventually the police pulled the car over, based on the report of the drive-by shooting. Several police cars were present, and the officers had their weapons drawn. The occupants were ordered to exit the car and came out one at a time with their hands clasped on their heads. They were put in police cars and taken to be booked.

¶ 6 The police searched the car at the scene. An officer looked in the glove compartment, but did not find a gun. After a subsequent search, the gun was found behind the glove box. Other officers looked in the back seat and, after noticing the seat cushion was detached, found marijuana under the seat. At the police station, defendant admitted that the marijuana found under the seat was his. Police also found an ammunition clip, identical to the one eventually found in the gun, in defendant's pocket.

¶ 7 Defendant was charged with possession of marijuana with intent to distribute, and with tampering with evidence. At trial, Todd testified as the State's witness that Hicks "stashed the gun in the glove box." He also testified that he did not know about any marijuana in the car; that defendant did nothing to hide the gun; and that he did not see any movements by defendant to hide marijuana under the seat. In fact, he stated he would have had to get up or move for defendant to put anything under the seat because it was a bench seat in the back. He also stated he was the last to leave the car.

¶ 8 Two officers testified they found the marijuana underneath the bench seat, though they had different recollections of which side it was on. The officers maintained that defendant was the last one out of the car. In addition, one of the officers stated that the marijuana could have been put there without a person getting up off the seat.

¶ 9 In closing argument, the prosecutor argued that the evidence showed that defendant hid the marijuana during the police pursuit, and therefore tampered with the evidence. The prosecutor also argued that defendant encouraged or aided Hicks in hiding the gun because defendant had an ammunition clip in his pocket. The jury convicted defendant of tampering with evidence and possession of a controlled substance. Defendant requested an arrest of judgment, which was denied. Defendant now appeals from his conviction of tampering with evidence.

## ISSUE AND STANDARD OF REVIEW

¶ 10 Defendant argues that there is insufficient evidence to justify a conviction of tampering with evidence. "We reverse the jury's verdict in a criminal case when we conclude as a matter of law that the evidence was insufficient to warrant conviction." *State v. Smith*, 927 P.2d 649, 651 (Utah Ct. App.1996) (quoting *State v. Harman*, 767 P.2d 567, 568 (Utah Ct.App.1989)). The defendant must overcome a heavy burden in challenging the sufficiency of evidence for a jury verdict. *See id.; State v. Vessey*, 967 P.2d 960, 966 (Utah Ct.App.1998). "We view the evidence in a light most favorable to the jury verdict," *State v. Bradley*, 752 P.2d 874, 876 (Utah 1985), and "will reverse only if the evidence is so 'inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime.'" *Smith*, 927 P.2d at 651 (quoting *Harman*, 767 P.2d at 568 (quoting *State v. Petree*, 659 P.2d 443, 444 (Utah 1983))). However, though the burden is high, it is not impossible. *See id.* "We will not make speculative leaps across gaps in the evidence." *Id.* (internal quotations and alterations omitted). "Every element of the crime charged must be proven beyond a reasonable doubt." *Harman*, 767 P.2d at 568. "To affirm the jury's verdict, we must be sure the State has introduced evidence sufficient to support all elements of the charged crime." *Smith*, 927 P.2d at 651.

## ANALYSIS

### I. Elements of Evidence Tampering

¶ 11 Defendant was convicted of tampering with evidence in violation of Utah Code section 76–8–510, which provides: "A person commits a felony of the second degree if, believing that an official proceeding or investigation is pending or about to be instituted, he: (1) Alters, destroys, conceals, or removes anything with a purpose to impair its verity or availability in the proceeding or investigation." Utah Code Ann. § 76–8–510 (1999). Thus, the State must prove three elements, each beyond a reasonable doubt: timing, action, and intent. The timing element requires that the act be done only after the defendant forms a belief that an investigation or proceeding is pending or imminent. *See, e.g., Smith*, 927 P.2d at 652. The action element requires alteration, destruction, concealment, or removal of evidence, and the intent element requires that the defendant intend to hinder an investigation or proceeding by making evidence unavailable or of lesser value. *See* Utah Code Ann. § 76–8–510 (1999).

¶ 12 As a threshold matter, defendant argues that the police stop of the car was not an "official proceeding or investigation" within the meaning of the statute, and thus he did not tamper with evidence. Defendant focuses on the term "official proceeding" as a formal action before a tribunal, but ignores the statutory term "investigation." We have previously held that the initiation of a police investigation is within the scope of the statute. *See, e.g., Smith*, 927 P.2d at 652 (noting that call to police to report dead body would result in investigation within scope of statute). Clearly, the chase and stop of the car pursuant to a report of a drive-by shooting was an investigation. Thus, we conclude the stop of the car was within the scope of the statute, and defendant could properly be charged with tampering with evidence.

¶ 13 Defendant also argues that the evidence-tampering statute must be read narrowly to cover only concealed evidence that is related to the purpose of the original investigation. He argues that we should look only to the initial purpose of the investigation—in this case, the drive-by shooting—and exclude from the reach of the evidence-tampering statute any evidence or contra-

band that is concealed but which is unconnected to the purpose of that original investigation. Thus, defendant argues that since the original police investigation concerned a drive-by shooting, the marijuana he allegedly concealed cannot subject him to an evidence-tampering charge. This argument is the basis of our able colleague's concurring opinion. We are not persuaded.

¶ 14 "When faced with a question of statutory construction, we look first to the plain language of the statute." *State v. Rudolph*, 970 P.2d 1221, 1229 (Utah 1998) (quoting *Stephens v. Bonneville Travel, Inc.*, 935 P.2d 518, 520 (Utah 1997)). We will not "infer substantive terms into the text that are not already there. Rather, the interpretation must be based on the language used, and the court has no power to rewrite the statute to conform to an intention not expressed." *Id.* (quoting *Berrett v. Purser & Edwards*, 876 P.2d 367, 370 (Utah 1994)).

¶ 15 The plain language of section 76-8-510 requires that the defendant believe "that an official proceeding or investigation *is pending or about to be instituted*" when the act of altering, destroying, concealing, or removing the evidence occurs. Utah Code Ann. § 76-8-510 (1999) (emphasis added).[1] The statute does not limit the purpose of the investigation to the original one or even to one investigation, nor does it require that the evidence be connected to the police purpose for the original investigation. In other words, if the defendant believes a police investigation is pending or imminent, for whatever purpose, and secretes evidence to impair its availability in that investigation, tampering has occurred. The purpose of the original investigation is not relevant. It is the defendant's subjective belief that an investigation is "pending or about to be instituted" that matters. The limiting element of the statute is the intent to hinder an investigation.[2] If defendant merely had marijuana in his pocket when stopped and searched to investigate a drive-by shooting, he could not be convicted under the statute, as he did not conceal the marijuana to impede an investigation. It was already in his pocket when he formed a belief that an investigation was imminent.

¶ 16 We therefore conclude that the evidence-tampering statute was properly applied to defendant's alleged concealment of the marijuana as the chase ensued, as well as to his alleged participation in hiding the gun.[3]

1. We and the concurrence read this plain language and come to very different conclusions. Thus, it might be well for the legislature to clarify the scope of the evidence-tampering offense.

2. Contrary to the view expressed by the concurrence, we do acknowledge the singular nature of the article "the" in subsection (1) of the statute. However, we read "the" as referring to the first clause of the statute. *See* Utah Code Ann. § 76-8-510 (1999)(requiring belief "that an official proceeding or investigation is pending or about to be instituted"). Unlike the concurrence, we do not read into the statute a requirement that the evidence concealed be related to the original crime under investigation. The defendant need only cause *"anything"* to be unavailable in *the* investigation that the defendant believes is pending or about to be instituted. Thus, it is the subjective mental state of the defendant, not that of the officer, that is critical. The officer's purpose in commencing the original investigation is not relevant; rather, it is defendant's belief that an investigation will occur that is significant.

3. The concurring opinion cites several cases to support its position that the evidence must be related to the original police purpose of the investigation. However, none of these cases contains any analysis of the plain language of the evidence-tampering statute. All simply contain factual settings in which the evidence concealed related to the original investigation. None requires that the evidence be so related. *See, e.g., State v. Eaton*, 701 P.2d 496 (Utah 1985) (per curiam); *State v. Helm*, 563 P.2d 794 (Utah 1977); *State v. Harley*, 1999 UT App. 197, 982 P.2d 1145; *State v. Smith*, 927 P.2d 649 (Utah Ct.App.1996).

In addition, the concurrence concludes that our interpretation shifts the burden of persuasion to the defense, thereby forcing the defendant to take the stand. This is not the case. The State must prove every element of the offense. However, as in any crime that turns on intent, the requisite intent may be proven in several ways, including defendant's own testimony or circumstantial evidence. The crime of evidence tampering is usually proven by circumstantial evidence. *See, e.g., Helm*, 563 P.2d at 796 (noting that "it is necessary to piece the truth together from the facts shown and any [ ] justifiable inferences"). As is true throughout criminal law, to rebut circumstantial evidence, the defendant may choose to testify. The position taken by the concurrence would destroy, or at least greatly undermine, the ability to prove intent through circumstantial evidence.

## II. Sufficiency of the Evidence

### A. The Gun

¶ 17 At trial, the State argued that defendant tampered with evidence, claiming he helped hide the gun used in the shooting based solely on the fact that an extra ammunition clip was found in defendant's pocket. It is undisputed that defendant, in the back seat, could not have physically assisted Hicks in hiding the gun in the glove box. The State first suggested that defendant may have had the gun himself, and had given it to Hicks to use in the shooting. The State argued that because he may be tied to the gun, after the shooting defendant must have encouraged Hicks to hide it. However, the State presented no evidence to support this inference.

¶ 18 The State alternatively suggested that defendant took the extra clip to disperse evidence and thus assisted in misdirecting the police. However, no evidence was introduced regarding when defendant first had the clip in his possession. To constitute tampering, he must have taken the clip after the shooting, believing that an investigation was imminent. *See* Utah Code Ann. § 76–8–510 (1999). However, it is just as possible, absent any evidence presented by the State, that he had the clip in his pocket all evening. Thus, by merely establishing defendant's possession of the extra clip, the State did not present sufficient evidence from which the jury could infer timing, concealment, and intent to conceal the gun beyond a reasonable doubt.

### B. The Marijuana

¶ 19 The State argues that, because defendant admitted the marijuana was his, and because it was found under the back seat, defendant concealed it after he saw the police as he believed he and the car were about to be searched. The State had to prove beyond a reasonable doubt that defendant hid the marijuana after he believed the car might be pulled over, and that he hid it for the purpose of obstructing the discovery of the marijuana.

¶ 20 We simply cannot say the evidence was sufficient to establish beyond a reasonable doubt each element of the crime. Defendant admitted the marijuana was his. However, there was no testimony by anyone that defendant made a furtive move or reached under the back seat during the police pursuit or stop. Testimony conflicted as to whether defendant was seated behind the driver or passenger. The State's witness, Tug Todd, testified that defendant was seated next to him, on the side of the back seat under which the marijuana was found. Todd testified repeatedly that he did not see defendant hide or place anything under, behind, or between the seats at any time. Todd also testified that he, not defendant, was the last person to leave the car. The officers who searched the car did testify that the back seat cushion was ajar and that the location where the marijuana was found could have been accessed by someone sitting on the seat. However, there was no testimony from anyone that defendant placed the marijuana under the seat after the police chase began. Defendant argued that the marijuana was stashed prior to the shooting. We cannot say that the evidence or reasonable inferences from the evidence were sufficient for the jury to find beyond a reasonable doubt that defendant hid the marijuana believing an investigation was going to occur and in order to impede the investigation. "We will not make speculative leaps across gaps in the evidence." *Smith*, 927 P.2d at 651 (internal quotations and alterations omitted). We simply cannot conclude that the State introduced sufficient evidence to support all the elements of evidence tampering beyond a reasonable doubt. We therefore reverse defendant's conviction.

## CONCLUSION

¶ 21 The evidence-tampering statute was properly applied to defendant's alleged concealment of the gun and the marijuana. However, insufficient evidence was presented to support all the elements of the crime of evidence-tampering. Accordingly, we reverse.

¶ 22 I CONCUR: GREGORY K. ORME, Judge.

DAVIS, Judge (concurring in the result):

¶ 23 I disagree with the majority's analysis in this case.

¶ 24 First, I disagree with the majority that the evidence was insufficient to support a conviction with respect to the marijuana merely because no witness testified to seeing defendant hide the marijuana during the pursuit or stop. Defendant bears a heavy burden to overcome the jury verdict on grounds of insufficient evidence and we will reverse on this basis only when the evidence is so " ' "inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime." ' " *See State v. Smith,* 927 P.2d 649, 651 (Utah Ct.App.1996) (citations omitted); *accord State v. Bradley,* 752 P.2d 874, 876 (Utah 1985) (per curiam). Defendant has not met this burden.

¶ 25 "It is well settled in this state that 'a conviction can be based on sufficient circumstantial evidence.' " *State v. Lyman,* 966 P.2d 278, 281 (Utah Ct.App.1998) (quoting *State v. Brown,* 948 P.2d 337, 344 (Utah 1997)). Moreover, " '[c]ircumstantial evidence need not be regarded as inferior evidence if it is of such quality and quantity as to justify a jury in determining guilt beyond a reasonable doubt and is sufficient to sustain a conviction.' " *Id.* (quoting *State v. Nickles,* 728 P.2d 123, 127 (Utah 1986)); *see also State v. Span,* 819 P.2d 329, 332–33 (Utah 1991) (holding that although "case was based entirely on circumstantial evidence," evidence was sufficient to support the conviction). The evidence, when viewed in the light most favorable to the jury's verdict, showed that defendant was the owner of the marijuana; he was in the back seat of the car; the marijuana was found under the back seat; the seat cushion was detached; the marijuana could have been hidden under the bench seat although another person was sitting on it; at least one of the car's occupants spotted the police before they were pulled over and hid the gun in the glove compartment; and another person owned the car, limiting defendant's ability to later retrieve any items. This evidence is sufficient for the jury to reasonably infer that defendant possessed the marijuana either at the time defendant's cohort spotted the police or when the police stopped the car and defendant believed an investigation into the shooting had commenced or was imminent, that with this belief there arose an incentive for defendant to hide contraband, and that as a result defendant quickly stashed his marijuana under the back seat to avoid its detection. Consequently, I conclude the evidence was sufficient.

¶ 26 Nonetheless, I would still reverse defendant's conviction for tampering with evidence (the marijuana) because such conduct is clearly not contemplated by Utah Code Ann. § 76–8–510 (1999). In construing a statute, "we look first to [the statute's] plain language as the best indicator of the legislature's intent and purpose in passing the statute." *Provo City v. Cannon,* 1999 Utah Ct. App. 344, ¶ 6, 994 P.2d 206 (first alteration omitted; alteration in original); *see also Hebertson v. Bank One, Utah, N.A.,* 1999 UT App. 342, ¶ 8, 995 P.2d 7 (" 'In matters of statutory construction, "[t]he best evidence of the true intent and purpose of the Legislature in enacting [an] Act is the plain language of the Act." ' ") (citations omitted; alterations in original).

¶ 27 Although the majority cites case law for the proposition that it must look first to the plain language of the statute, it ignores such language in holding that "[t]he statute does not limit the purpose of the investigation to the original one or even to one investigation, nor does it require that the evidence be connected to the police purpose for the original investigation." *Supra,* at ¶ 15. The tampering with evidence statute provides: "A person commits a felony of the second degree if, believing that an official proceeding or investigation is pending or about to be instituted, he: (1) Alters, destroys, conceals, or removes anything with a purpose to impair its verity or availability in *the* proceeding or investigation. . . ." Utah Code Ann. § 76–8–510 (1999) (emphasis added). The first part of the statute provides the intent element: that defendant "believ[e] that an official proceeding or investigation is pending or about to be instituted." *Id.* The majority correctly concludes that the plain language in this first part of the statute does not limit the

type of proceeding or investigation that may satisfy the intent element and, hence, the chase and stop of the car here, part of the shooting investigation, invoked the statute.

¶ 28 The second part of the statute, however, provides for criminal liability only if the defendant "[a]lters, destroys, conceals, or removes anything with a purpose to impair its verity or availability in *the* proceeding or investigation." *Id.* § 76–8–510(1) (emphasis added). Hence, the statute uses a definite article "the," instead of the general term "an" as in the first part of the section. For purposes of statutory construction, the "definite article 'the' particularizes the subject which it precedes and is [a] word of limitation as opposed to indefinite or generalizing force 'a' or 'an.'" Black's Law Dictionary 1477 (6th ed.1990). By using "the," the statute requires that the proceeding or investigation in the second part be the same as that in the first part—i.e., the defendant must intend to impair the verity or availability of evidence in the same proceeding or investigation as that which he believes is pending or about to be instituted.[1] *See* Webster's New Collegiate Dictionary 1208 (1977) (stating that "the" is "used as a function word to indicate that a following noun or noun equivalent is a unique or a particular member of its class"); *see also State v. Helm,* 563 P.2d 794, 796 (Utah 1977) (affirming tampering with evidence conviction when "there was an official investigation under way; ... the defendant ... took possession of evidence *relating to it;* and ... nothing further was seen or heard of it until fifteen months later") (emphasis added). Although the majority purports to embrace the proposition that the investigation or proceeding in both parts of the statute must be the same, *see supra,* ¶ 15 n. 2, it simply fails to apply that interpretation. If the investigation or proceeding in both parts of the statute must be the same, then defendant is criminally liable under the statute only if either (1) the marijuana had some relation to the shooting investigation—of which the chase and stop was part—that implicated section 76–8–510 and defendant hid it to impede that investigation;[2] or (2) the State shows there was a marijuana investigation in which the defendant sought to impair the verity or availability of the marijuana. Neither scenario applies here.[3]

¶ 29 The majority does not recognize that "'statutory enactments are to be so construed as to render all parts thereof relevant and meaningful, and ... interpretations are to be avoided which render some part of a provision nonsensical or absurd.'" *Perrine v. Kennecott Mining Corp.,* 911 P.2d 1290, 1292 (Utah 1996) (citation omitted; omission in original). Under the majority's interpretation, the requirements in the first part of section 76–8–510—that defendant "believ[e] that an official proceeding or investigation is pending or about to be instituted"—apply in limitless situations and thus become meaningless. Without a tie to the proceeding or investigation a defendant seeks to hinder as described in subsection (1), knowledge of vir-

---

1. Particularly telling of the majority's variance from the statute's plain language is its characterization of the intent element. The majority trades the statute's definitive wording "the" for the general in stating "the intent element requires that the defendant intend to hinder *an* investigation or proceeding." *Supra,* ¶ 11 (emphasis added). I see no need for the Legislature to "clarify" the statute's scope. The statute is clear and when its plain language is properly applied the absurd results demonstrated by the instant case do not occur.

2. Stated alternatively, because the marijuana had no probative value relevant to the shooting investigation, defendant's concealment—or even destruction—of it could not "impair its verity or availability in *the* proceeding or investigation." Utah Code Ann. § 76–8–510(1) (1999) (emphasis added).

3. By concluding that section 76–8–510 applies to tampered-with evidence unrelated to the actual investigation, the majority detours from existing case law. *See, e.g., State v. Eaton,* 701 P.2d 496, 497 (Utah 1985) (per curiam) (alteration of breathalyzer test results in investigation of driving while under the influence); *Helm,* 563 P.2d at 795–96 (taking officer's notes and recording of officer's conversation with suspect to prevent prosecution of the charge suspected); *State v. Harley,* 1999 UT App. 197, ¶¶ 7, 12, 982 P.2d 1145 (gun used in robbery was thrown from window of vehicle when signaled to stop by officer investigating the robbery), *cert. denied,* 1999 Utah LEXIS 256, 994 P.2d 1271 (Utah Dec. 20, 1999); *State v. Smith,* 927 P.2d 649, 651–52 (Utah Ct.App.1996) (defendant moved drug paraphernalia to impede investigation of death caused by drugs).

tually *any* proceeding or investigation which may or may not occur will suffice to invoke the statute.

¶ 30 Particularly troubling about the majority's interpretation is that it provides no meaningful distinction between actions taken to complete a separate crime that, depending on whether the crime is later discovered, may or may not lead to an official proceeding or investigation, and those separate actions taken by a defendant to interfere with an investigation that is continuing or imminent. That is, because a defendant's conduct in committing a crime nearly always involves some element of avoiding detection, the majority's holding that such conduct can constitute tampering with evidence effectively and impermissibly transforms nearly every crime into a second degree felony. *Cf.* Utah Code Ann. § 76-1-402(1) (1999) ("[W]hen the same act of a defendant under a single criminal episode shall establish offenses which may be punished in different ways under different provisions of this code, the act shall be punishable under only one such provision...."). Defendant is left with little option but to take the stand to testify that although he committed a crime unrelated to an ongoing investigation or imminent investigation which may or may not occur, his actions were not designed to hinder the same. As we have previously stated:

> It is no answer to suggest that the [defendant] could take the stand and establish her innocence.... In our justice system, the prosecution must prove guilt beyond a reasonable doubt; the defendant need not prove innocence. And the defendant, whether guilty or innocent, is privileged to remain silent. An inference that springs from thin air lessens the prosecution's burden while chilling the defendant's Fifth Amendment privilege.

*State v. Kihlstrom,* 1999 UT App. 289, ¶ 10 n. 5, 988 P.2d 949. The majority position thus has the effect of defeating the presumption of innocence, shifting the burden of proof to defendant, and requiring defendant to forfeit his right to silence, essentially creating strict liability offenses. *See, e.g., Francis v. Franklin,* 471 U.S. 307, 313, 105 S.Ct. 1965, 1970, 85 L.Ed.2d 344 (1985) (stating that the requirement of proof beyond a reasonable doubt "prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime"); *In re Winship,* 397 U.S. 358, 363, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970) ("The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure [and] provides concrete substance for the presumption of innocence—that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.' ") (citation omitted); *State v. Castonguay,* 663 P.2d 1323, 1326 (Utah 1983) ("[W]e have ... cautioned that the act itself does not raise the presumption that it was done with the specific intent required to prove the offense."); *State v. Tebbs,* 786 P.2d 775, 777–78 (Utah Ct.App. 1990) (stating that if statute shifted to defendant the burden to disprove an element of the crime, it "would violate the Due Process clauses of the United States and Utah Constitutions").

¶ 31 The majority asserts that the statute is limited because it requires an "intent to hinder an investigation," *supra,* at ¶ 15, stating that had defendant merely had the marijuana in his pocket he could not be convicted of tampering. Yet under its analysis, if defendant selected that particular pocket, not just for a convenient carrying place, but because it also hid the marijuana from plain view, the defendant could be convicted of tampering with evidence by concealment. Defendant would have to explain (1) that he did or did not believe an investigation into the as yet undetected crime would be commenced, and (2) that he did or did not place the evidence with a purpose to impair its availability to that investigation. The possibilities of ratcheting virtually any minor, undetected offense into a second degree felony are virtually limitless, especially where the evidence is contraband.

¶ 32 For example, if an eighteen-year-old in possession of tobacco places the same under the seat of his car upon being stopped for an investigation of a traffic violation, he would be guilty of second degree felony tam-

pering with evidence of the crime of illegal possession of tobacco in addition to the class C misdemeanor for possession of tobacco by an eighteen-year-old. *See* Utah Code Ann. § 76–10–105(1) (1999). In the instant case, the marijuana may or may not have been discovered, and an investigation may or may not have commenced focusing on defendant.[4]

¶ 33 In sum, I believe the evidence was sufficient to support a conviction for tampering with evidence regarding the marijuana, as the majority reads the statute. However, I disagree with the majority's interpretation. The plain language of section 76–8–510 requires that the defendant intend to hinder the same investigation that he believes is ongoing or imminent, not one that may or may not occur, and especially where the evidence *is* the crime. Here defendant lacked such intent with regard to the investigation of the shooting and the statute simply does not allow for criminal liability for defendant hiding the marijuana. Accordingly, I would reverse on that basis.

---

4. I am not persuaded by the argument of counsel for the State that such instances will not lead to a prison sentence because the tampering with evidence statute will be only selectively prosecuted. Even if selective prosecution should be encouraged, *see* Utah Const. art. I, § 24 ("All laws of a general nature shall have uniform operation."), the instant case demonstrates why such decisions should not be left to the prosecutor's unbridled discretion.