# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 10, 2015


## STATE OF TENNESSEE v. VERCHAUNT JOSHUA WILLIAMS


### Appeal from the Circuit Court for Montgomery County
### No. 41200439      Michael R. Jones, Judge

_____

### No. M2014-02049-CCA-R3-CD – Filed August 26, 2015

_____


The defendant, Verchant Joshua Williams, was convicted of one count of first degree (premeditated) murder, one count of tampering with evidence, a Class C felony, and one count of abuse of a corpse, a Class E felony. On appeal, he challenges the sufficiency of the evidence of his convictions for tampering with evidence and abuse of a corpse, arguing that the two convictions should merge. Following our review of the briefs, the record, and the applicable law, we affirm the judgments of the trial court.


### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed


JOHN EVERETT WILLIAMS, delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J. and CAMILLE R. MCMULLEN, J., joined.

Gregory D. Smith (on appeal), and Edward Dewerff (at trial), Clarksville, Tennessee, for the Appellant, Verchaunt Joshua Williams.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; John W. Carney, District Attorney General; and Helen Young, Assistant District Attorney General, for the Appellee, State of Tennessee.


### OPINION

# FACTS AND PROCEDURAL HISTORY

This case arose after the defendant shot and killed the victim, Brandon Rushing. The victim and the defendant were friends, and the victim was the godfather of the defendant's son.

On January 23, 2012, the defendant and Ojawaine Marbury came to the Avondale apartment complex. The men came to the apartment of Asia Graves, whose ex-boyfriend, Leo Bakke, was an acquaintance of the defendant's. Ms. Graves heard a knock at the door and opened it to find the defendant and Mr. Marbury. Mr. Marbury greeted her and left the apartment. The defendant said that he was looking for Mr. Bakke. He lifted his shirt to reveal a gun in the waistband of his pants, and Ms. Graves let him into the apartment.

Ms. Graves informed the defendant that she and Mr. Bakke were no longer dating, and the defendant began searching the apartment looking for Mr. Bakke and his belongings. He told Ms. Graves that he had "some business" to take care of with Mr. Bakke. The defendant poured himself a drink, and Ms. Graves poured one for herself. For the next hour, the defendant began to make phone calls and was intermittently leaving and returning to the apartment. During one phone call, the defendant was giving directions to the apartment building and telling the caller that someone would meet the caller outside.

Shortly after this phone call, the defendant ordered Ms. Graves to go outside, and the victim pulled into the parking lot in front of her building. Ms. Graves met the victim and took him into her apartment, where she poured him a drink and told him to sit down at the kitchen table. The defendant was in Ms. Graves' bedroom in the back of the apartment, and he summoned her to the bedroom. He asked for Ms. Graves' makeup bag, and he concealed a gun inside of the bag. He left the bedroom with the bag and walked into the kitchen. Ms. Graves heard the victim say, "Yo, Blue, what the−," and then she heard gunshots. She exited the bedroom and saw the victim lying on the floor. The defendant was standing over the victim saying, "I got that mother f****r, he's dead now." The defendant ordered Ms. Graves not to tell anyone about the shooting. The defendant exclaimed that he would be the "King of Clarksville" and told Ms. Graves that she would be taken care of financially as long as she did not tell anyone what she had seen.

The defendant called Jeff Jackson to boast about shooting the victim. He had Ms. Graves talk to Mr. Jackson to confirm the victim's death. Mr. Jackson came over to the apartment, and he and the defendant drove Ms. Graves to work. At the conclusion of her shift, the defendant picked her up from work. Ms. Graves heard the defendant make a

2

phone call to ask for assistance in removing the body. They returned to her apartment, and Mr. Jackson and Mr. Marbury were there. The victim's body was wrapped in a blanket, and the apartment smelled of bleach. Portions of the carpet and flooring had been cut out and removed. The men needed a fourth person to move the victim's body, and the defendant ordered Ms. Graves to assist them. The four took the body and placed it in the back seat of the victim's car. They placed carpet fiber, towels with bleach on them, "and basically everything that [they] could find that would be incriminating" into garbage bags and into the car. Mr. Marbury testified that he saw the defendant place a can of gasoline into the car.

The defendant drove the victim's car onto Ashland City Road, and Mr. Jackson and Mr. Marbury followed behind him in a separate car. The defendant parked the victim's car in a secluded location and set the car on fire. Mr. Jackson and Mr. Marbury were able to see the flames from the road. The defendant got into the car with Mr. Jackson and Mr. Marbury, and the three drove away. Mr. Jackson testified that several days later, the defendant asked Mr. Jackson to drive him back to the victim's car so that he could burn the remains of the vehicle. Mr. Jackson stated that he saw the defendant take gasoline with him.

On February 16, 2012, Officer Brian Coghill spotted the victim's vehicle. Officer Coghill did not approach the vehicle himself, but he reported the discovery to other officers. Sergeant Gregory Beebe and Officer Jeffrey Derico were two of the officers who searched the victim's vehicle. The vehicle was discovered in a secluded area that was primarily farmland, and only the back portion of the vehicle was visible from the road. Officer Derico testified that the vehicle was in a field and was not easily accessible by vehicle, requiring officers to proceed to the car on foot. Sergeant Beebe described the vehicle as "the most burned out vehicle [he] had ever seen." Officers discovered pieces of carpet, a piece of glass, pieces of bone, and cleaning supplies in the area around the vehicle. The pieces of carpet matched samples of the carpet from Ms. Graves' apartment.

The jury convicted the defendant on all counts as charged. The trial court imposed a life sentence for the first degree murder conviction, a five-year sentence for tampering with evidence, and a two-year sentence for abuse of a corpse. The court ordered the sentences for tampering with evidence and abuse of a corpse to run concurrently with each other but consecutively to the life sentence, for an effective sentence of life plus five years. The defendant timely filed a motion for new trial, which the trial court denied.

3

**ANALYSIS**

On appeal, the defendant argues that the evidence is insufficient to sustain his convictions for tampering with evidence and abuse of a corpse.[1] Although he frames his argument as a challenge to the sufficiency of the evidence, the thrust of the defendant's argument is that his convictions should merge because the multiple convictions violate the principles of Double Jeopardy. Therefore, we separately address the questions of sufficiency and merger.

**I. Sufficiency of the Evidence**

When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after viewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Therefore, this court will not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Instead, it is the trier of fact, not this court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

Tennessee Code Annotated section 39-16-503(a)(1) (2010) provides that "[i]t is unlawful for any person, knowing that an investigation or official proceeding is pending or in progress, to . . . [a]lter, destroy, or conceal any record, document or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding." In order to obtain a conviction for tampering with evidence, the State must prove "three elements beyond a reasonable doubt—'timing, action, and intent.'" *State v. Hawkins*, 406 S.W.3d 121, 132 (Tenn. 2013) (quoting *State v. Gonzales*, 2000 UT App.

---

[1] At the motion for new trial, the defendant argued that the evidence was insufficient to sustain his convictions because the proof was based solely on the uncorroborated testimony of co-conspirators. However, he does not raise this argument on appeal, and we do not address it.

136, ¶ 11, 2 P.3d 954, 957) (Utah App. 2000)). The "timing" element requires the State to prove that the defendant acted after forming a belief that an investigation or proceeding was impending. *Hawkins*, 406 S.W.3d at 132; *see State v. Smith*, 436 S.W.3d 751, 763 (Tenn. 2014). "The 'action' element requires alteration, destruction, or concealment." *Hawkins*, 406 S.W.3d at 132. The "intent" element requires that the defendant intend for his actions "to hinder the investigation or official proceeding by impairing the record's, document's, or thing's 'verity, legibility, or availability as evidence.'" *Id.* (quoting T.C.A. § 39-16-503(a)(1)).

Viewing the evidence in the light most favorable to the State, the defendant cut out portions of carpet with the victim's blood and placed them into a garbage bag. He placed the bag into the victim's vehicle and drove the vehicle to an isolated and secluded location. He set the vehicle on fire and returned several days later to again burn the vehicle and its contents. Police discovered the burned vehicle, which Sergeant Beebe described as one of the most destroyed vehicles he had ever seen. Further, the charred pieces of carpet matched samples taken from Ms. Graves' apartment. We conclude that the evidence is sufficient to sustain the defendant's conviction.

A person commits abuse of a corpse "who, without legal privilege, knowingly . . . [p]hysically mistreats a corpse in a manner offensive to the sensibilities of an ordinary person." T.C.A. § 39-17-312(a)(1).

Viewing the evidence in the light most favorable to the State, the victim was shot in the head, and his body was rolled into a blanket. With the assistance of others, the defendant carried the body to the victim's car and crammed the body into the back seat. He then drove to a secluded area and set the car and the body on fire. Visual identification of the body was not possible because the victim's body had been burned nearly to the point of cremation. Accordingly, we conclude that the evidence is sufficient to support the defendant's conviction, and he is not entitled to any relief.

## II. Merger

The defendant contends that his convictions for tampering with evidence and abuse of a corpse violate the principles of Double Jeopardy. Citing *State v. Henretta*, 325 S.W.3d 112, 141-42 (Tenn. 2010), the defendant alludes to the "essentially incidental" test of *State v. Anthony* in arguing that the tampering with evidence and abuse of a corpse convictions arose from the same criminal transaction. Specifically, he argues that the burning of the victim's body, vehicle, and the carpet were all part of the same criminal episode and constituted a single criminal act.

In *State v. Watkins*, 362 S.W.3d 530, 556 (Tenn. 2012), our Supreme Court adopted the test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), to determine whether multiple convictions under separate statutes punished the same offense. The court stated that:

> The first step of the *Blockburger* test is the threshold question of whether the convictions arise from the same act or transaction. This threshold question should be answered by reference to the charging instrument and the relevant statutory provisions. Here it is appropriate to consider whether the charges arise from discrete acts or involve multiple victims. . . . Thus, a threshold determination that multiple convictions do not arise from the same act or transaction ends the inquiry and obviates the need for courts to further analyze double jeopardy claims.

> If the threshold is surpassed, meaning the convictions arise from the same act or transaction, the second step of the *Blockburger* test requires courts to examine the statutory elements of the offenses. If the elements of the offenses are the same, or one offense is a lesser included of the other, then we will presume that multiple convictions are not intended by the General Assembly and that multiple convictions violate double jeopardy. However, if each offense includes an element that the other does not, the statutes do not define the "same offense" for double jeopardy purposes, and we will presume that the Legislature intended to permit multiple punishments.

*Watkins*, 362 S.W.3d at 556-57 (footnotes omitted).

We must first determine whether the defendant's convictions "arise from the same act or transaction." In order to find the defendant guilty of tampering with evidence, the jury had to find that the defendant both removed portions of the carpet from Ms. Graves' apartment and that he burned the victim's vehicle. In order to find him guilty of abuse of a corpse, the jury had to find that he physically mistreated a corpse in a manner that offended the sensibilities of an ordinary person. The portions of the carpet containing the victim's blood were cut out of the floor before the victim's body was burned. The removal of the carpet was unrelated to any physical mistreatment of the victim's body and was an act wholly separate from the burning of the victim's body. Therefore, the acts that led to the defendant's convictions were not part of the same transaction and do not implicate double jeopardy principles.

6

However, even if the defendant's conviction for tampering with evidence was based solely on his burning of the victim's vehicle, tampering with evidence and abuse of a corpse are not the same offense for the purposes of the second step of the *Blockburger* inquiry. Abuse of a corpse requires a specific finding that a corpse is the object that is mistreated, disinterred, or disposed of, while tampering with evidence contains no such restriction. Tampering with evidence requires that the alteration, destruction, or concealment of an object be done for the purpose of impairing its "verity, legibility, or availability as evidence in the investigation," while abuse of a corpse does not. Each statutory offense contains an element not found in the other, and one is not a lesser included offense of the other. Therefore, we conclude that the legislature intended to allow multiple convictions for these offenses. The defendant's convictions do not violate the principles of Double Jeopardy, and he is not entitled to a merger of the offenses.

## CONCLUSION

Based upon the foregoing, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE

7